[1] Respondent E.R. Underwood was employed as a ranch superintendent by a corporation that owned and operated a ranch. The corporation will hereafter be referred to as the company. In the discharge of his duties, which were varied in character, Underwood did much traveling far and near, in an automobile furnished him for the purpose by the company. Much of his time, also, was expended in various pursuits upon the ranch itself. He was supposed to be occupied about the company's business in the daytime from Monday morning to Saturday night of each week, but he was also subject to special call at any time, day or night. Upon the day — which was Saturday — upon which arose the occurrences which are of interest *Page 252 
here, there was being considered the necessity for spraying some trees upon the ranch. It became necessary for a horticultural commissioner, who was stationed at a town some thirty-five miles from the ranch, to be consulted as to the best means of conducting the projected operations. Upon the Saturday afternoon Underwood's superior in the handling of the company's affairs instructed him to go to the horticultural commissioner and ask his advice upon the troublesome subject. Underwood testified before the respondent Industrial Accident Commission that the superior said he had seen an article in which a certain method of spraying was advised, and, further, "he instructed me to see [the commissioner] before returning to the ranch and consult with him as to whether it was necessary for us to do that on our particular place." Shortly after this conversation Underwood went to a garage not far from the ranch, where his car was being repaired, procured it and drove away. He did not take the direct road to the town above mentioned, but left it approximately at right angles on a course which, after two turns to the left, would bring him back to the direct route thus referred to. The distance around this detour — we so term it for convenience only — was about four miles. Underwood's home was at a point on the road he thus took, in a stretch he traversed after making the first left turn. Before he departed from the ranch one of the company's employees had given him some olives for his own consumption. These were contained in a large wooden bucket, which was filled with the fruit and with the brine in which it was immersed. When Underwood reached the garage he had placed the bucket in the car. When he reached his home he deposited the olives there and proceeded along the remainder of the so-called detour over a well-paved and well-traveled road which was on the direct route from his home to the town where the horticultural commissioner was to be found. On making the second turn above mentioned he collided with another automobile and was injured. He applied to respondent Commission for compensation for his injuries and an award was made in his favor. This proceeding was instituted for the purpose of annulling the award.
Further light is thrown upon the question presented by the testimony of Underwood's superior before the Commission. *Page 253 
He said: "He is a man that is carrying rather heavy burdens and his calls away from the ranch for various reasons take him in many directions, employing help, buying supplies and reporting to me every Saturday, and his employment is in a similar nature to mine in that I am on duty all the time and if anyone rang up Mr. Underwood in the middle of the night, Sunday night, Saturday night, or any other night, it would be up to him to respond and he would respond. Q. It would be his duty as your employee? A. Absolutely. A superintendent has no hours. Due to that fact, we extend rather broad latitude to that class of man and if he had business to attend to of his own when he was in town on Saturday, that would be perfectly all right with us and he understood it that way. If he had occasion to stop at his home he would still be on duty due to that latitude given. Q. You did not fix any particular hours that he would travel or the route he would take in the execution of his business? A. It would be impossible. Q. That was left to his discretion? A. Absolutely. . . . A man occupying the position he does cannot separate his business from his personal affairs. They are intermingled sometimes, usually at all times. It is not like a man going on duty at 8 o'clock in the morning and leaving at 6. Q. He was practically subject to call at any time? A. Yes, sir."
We think respondent Commission was justified in finding from the evidence before it that Underwood did not commence his journey to consult the horticultural commissioner until after he had left the olives at his home. His injuries therefore arose out of his employment and were incurred in the course of it. He was not instructed to go directly to the horticultural commissioner, but only to see him "before returning to the ranch." Undoubtedly, considering the general character of his employment, these special instructions would have been entirely satisfied if he had remained at home, after unloading the bucket of olives, until after dinner, or even until the next day, or perhaps even until Monday morning, then proceeding to consult the commissioner and thereafter communicating the result to his superior the next time he appeared at the ranch. These views force the conclusion that his journey upon the business *Page 254 
of his employer began at the time we have already indicated.
Petitioner contends, of course, that Underwood should have proceeded directly from the garage to the town and that his side trip to his home took him outside the course of his employment and that he would not again have entered it until he returned to the direct route from the garage to the town. Employers'Liability Assur. Corp. v. Industrial Acc. Com., 182 Cal. 612
[187 P. 42], and other authorities cited in the opinion there rendered are referred to by petitioner as supporting this contention. We think all those cases very different from the one now before us.
Award affirmed.
Craig, J., and Thompson, J., concurred.