[Civ. No. 8517. First Appellate District, Division Two.—January 23, 1933.]

RUBY RADER et al., Respondents, v. R. E. KEELER, Appellant.

Bronson, Bronson & Slaven for Appellant.

Edmund J. Holl for Respondents.

SPENCE, J.—Plaintiffs brought this action seeking to recover damages for personal injuries sustained by plaintiff Ruby Rader. Upon a trial by jury, judgment upon the verdict was entered in favor of plaintiffs, from which judgment defendant appeals.

The determinative question raised on this appeal relates to the jurisdiction of the trial court and we will therefore set forth only such facts as bear upon this question. Plaintiff Ruby Rader, hereinafter referred to as plaintiff, was admittedly an employee of defendant. Said defendant was the owner of a concession known as a Country Store in a traveling street carnival known as the Craft Shows. Plaintiff was employed to assist defendant in operating the concession and was to receive for her services twenty-five per cent of the money which she collected from the patrons. Plaintiff had been employed by defendant for about four weeks prior to the accident during which period the carnival had operated in the towns of Imperial, Calexico, Brawley and El Centro. Plaintiff had been transported by defendant from town to town in a Ford coupe owned by defendant. On March 8, 1931, the carnival closed its stand

in El Centro and defendant told plaintiff to be ready at 8 o'clock the next morning at which time he would call for her. On the following morning defendant called for plaintiff at the agreed time and then started for Los Angeles for the purpose of learning where the Craft Shows would next exhibit and proceeding to the designated place. The accident occurred while defendant was operating his automobile on said trip to Los Angeles with plaintiff as his passenger.

It was appellant's contention in the trial court raised by his answer, his motion for nonsuit, his motion for directed verdict and his motion for judgment notwithstanding the verdict, that the trial court had no jurisdiction over the controversy and that the Industrial Accident Commission has exclusive jurisdiction thereof. Appellant contends on this appeal that "according to the undisputed evidence and as a matter of law the injuries of plaintiff Ruby Rader arose out of and in the course of her employment by defendant Keeler and that for that reason the trial court had no jurisdiction of the subject matter of the action". In our opinion this contention must be sustained.

The well-recognized exception to the so-called "going and coming rule" is set forth in *Dominguez* v. *Pendola*, 46 Cal. App. 220 [188 Pac. 1025], where the court held that the superior court was without jurisdiction as the Industrial Accident Commission had exclusive jurisdiction. It is there said on page 222: "Where transportation is furnished by an employer, as an incident of the employment, to convey an employee to and from the place of employment, an injury suffered by the employee going or coming in the vehicle so furnished by the employer, and under the control of the employer, arises out of and is in the course of the employment within the meaning of the Compensation Act." (Citing authorities.)

In Bradbury's Workmen's Compensation, third edition, page 480, cited by the court in the foregoing decision, the rule is stated as follows: "If an employee is conveyed to and from his work in a conveyance furnished by the employer, under an express or an implied contract to furnish such conveyance, an injury to an employee while on the journey, arises out of the employment."

Further expression is given to this principle in the recent case of *Trussless Roof Co.* v. *Industrial Acc. Com.*, 119 Cal. App. 91, at page 93 [6 Pac. (2d) 254], where the court said: "Without tracing the steps whereby the principle has been developed, it suffices to note that it is now established that injuries received by an employee, while making use of transportation furnished by and under the control of his employer, as such, are compensable under the Workmen's Compensation Act, though the employee at the time was not at work but was going to or from the place of employment. (*Dominguez* v. *Pendola*, [1920] 46 Cal. App. 220 [188 Pac. 1025], and a multitude of cases reviewed in the notes found in 10 A. L. R. 169, 21 A. L. R. 1223, 24 A. L. R. 1233, and 62 A. L. R. 1438.) The use of the words 'as such' is necessary because courtesy rides given by the employer do not give rise to liability under the statutes. (*Boggess* v. *Industrial Acc. Com.*, [1917] 176 Cal. 534 [169 Pac. 75, L. R. A. 1918F, 883]; *Gruber* v. *Mercy*, [1929] 7 N. J. Misc. Rep. 241 [145 Atl. 106].) In other words, the transportation has to be furnished as a part of the contract of employment, to come within the rule. (*In re Donovan*, [1914] 217 Mass. 176 [104 N. E. 431, Ann. Cas. 1915C, 778].)"

Numerous authorities on this subject are cited in *Sylcox* v. *National Lead Co.*, 225 Mo. App. 543 [38 S. W. (2d) 497]. It is there said on page 499: "Generally speaking, it is the scope of the contract of employment which furnishes the determinative test of whether such an accident is one for compensation. In other words, it is the contract of employment, and not the actual commencement of labor, which establishes the relationship of the parties under the act. If the right to transportation is given, either positively or inferentially, by the terms of the contract, the employment begins when the employee boards the bus to go to the scene of his labor; it continues throughout the entire period of transportation; and it terminates when he leaves the bus at his home."

It thus appears that if the transportation in the present case was being furnished "under an express or implied contract," or in other words, if the right to transportation was given "either positively or inferentially by the terms of the contract", the injury to respondent while being

so transported was one arising out of and in the course of the employment. A review of the record shows without conflict that the transportation was being so furnished and that the right to transportation was so given.

Starting with the opening statement made by counsel for respondents, we find the following: "The plaintiff was employed to operate a concession for the defendant, . . . The plaintiff was operating what is termed the 'Country Store', for the defendant. As part of the consideration the defendant was to transport the plaintiff from the various places when the show was closed, to the next place. It was in his agreement that he would provide transportation after a show had closed." Proceeding to the direct examination of respondent, the following appears: "Q. In the agreement you made with Mr. Keeler, was anything ever said that he would arrange transportation for you from town to town after the close of the show? A. Yes, sir. Mr. Slaven. Is it admitted there was no written agreement? Mr. Holl. Oh, yes. I merely asked if there was any agreement of that sort. Was that reduced to writing? A. No, he just told my husband and myself that he would transport me from town to town because my husband was not there. . . . Q. Were you paid while you were moving from town to town or not? A. I was given my transportation." She further testified on cross-examination as follows: "Q. And you were paid for that service 25 per cent of what you took in while you were selling tickets and taking money? A. There wasn't any tickets sold. Q. Well, while you were taking the money, then? A. Yes, sir. Q. And in addition to that he agreed to transport you from town to town? A. Yes, sir. . . . Q. Now, you had ridden with him before, had you not, in that same Ford car? A. Yes, sir. Q. He had transported you under this agreement from other towns, had he not? A. Yes, sir. Four towns. We had only been there four weeks. Q. And what were those four towns? A. Imperial, Calexico, Brawley, El Centro. Q. And between those four towns he had transported you in that same automobile? A. Yes, sir. Q. And that was under the agreement he had made to give you 25 per cent of what you took in and to furnish transportation? A. Yes, sir, to transport me from town to town. . . . Q. But he said he would transport you from town to town? A. Yes, sir, he told me he would carry me

from town to town." The only other testimony on this subject was given by appellant on his deposition which was introduced on the trial. The following question and answer is there found: "Q. Did you ever tell her when you hired her it would be understood you were to transport her from place to place as the show moved on, from one show place to another? A. I don't think I ever told her that. The supposition was that she was to ride with me."

It therefore appears that there was no material conflict in the evidence relating to the agreement to furnish transportation. According to respondent such agreement was express, while, according to appellant, such agreement was implied. As the evidence shows without conflict that there was either an express or implied agreement for furnishing transportation to respondent, it may be said as a matter of law that the injury arose out of and in the course of the employment and therefore the superior court had no jurisdiction.

The conclusions which we have reached make it unnecessary to discuss the remaining contentions of appellant.

The judgment is reversed.

Nourse, P. J., and Sturtevant, J., concurred.

A petition by respondents to have the cause heard in the Supreme Court, after judgment in the District Court of Appeal, was denied by the Supreme Court on March 24, 1933.