Bock *v.* Reading, Appellant.

Argued November 12, 1935.

Before KELLER, P. J., CUNNINGHAM, BALDRIGE, STADTFELD, PARKER, JAMES and RHODES, JJ.

*William McK. Rutter,* Assistant City Solicitor, with him *John W. Speicher,* for appellant.

*Edward D. Trexler,* for appellee.

OPINION BY PARKER, J., January 31, 1936:

The question involved in this appeal is whether there is sufficient evidence on the record to sustain a finding of the workmen's compensation board that the husband of the claimant was killed in the course of his employment with the city of Reading. The referee and board found for the claimant and the action of the board was affirmed by common pleas.

Salem J. K. Bock was, for a number of years, employed by the city of Reading as foreman of its garbage disposal plant. On February 9, 1933, between 6:30 and 7:00 P. M., he was found seriously injured in an automobile belonging to the city on a public road between Reading and his home, and he died a few minutes later. The garbage plant was located southwest of Reading and the deceased lived at Kutztown, northeast of Reading and about eighteen miles from the plant. William J. Smith, one of the city councilmen and director of the department in charge of the garbage plant, testified: "When Mr. Bock first came to the city of Reading, back in 1923, if my memory serves me right, he had been an employe of the Kutztown Foundry Company. And it was a joint arrangement between the

Kutztown Foundry and the city of Reading whereby we could have his services as a foreman to operate the garbage plant; and at that time he had the use of the Kutztown Foundry Company's Ford car, or at least a small car. And then later, Mr. Bock of course became an out-and-out employe of the city, with no obligation to the Kutztown Foundry. In view of the fact that he lived at Kutztown, and at that time was without a machine, I agreed to let him have the machine and let him go back and forth to his home because of the lack of transportation at the hour at which he came some mornings to work, and that is how the car happened to be assigned to Mr. Bock. It was a matter entirely between myself and Mr. Bock, not by any action of Council." Bock was employed by virtue of a resolution of council as follows: "Resolved, That Salem Bock be and he hereby is appointed foreman at the Garbage Disposal Plant, effective July 2, 1923." No formal action by council was found fixing his compensation, but he was paid by the city for ten years first at the rate of $2,400 and then at $3,000 per annum. He was first furnished with a Ford and then with a Dodge Coupe which the city kept in repair and maintained, including gasoline and oil. From time to time he reported at the city hall and his hours of service were largely determined by himself, except that he was required to report at the plant early in the morning before there was available any public transportation service. He usually left his work about 3:30 P. M., but on occasions was detained until 6:00 P. M. and later.

As a general proposition, the liability of an employer ceases when the employee leaves the premises where he is employed, and the compensation law does not apply to an employee while going to and returning from his place of employment: Haley v. Phila., 107 Pa. Superior Ct. 405, 408, 163 A. 917; Cronin v. American Oil Co., 298 Pa. 336, 340, 148 A. 476. There is an exception

where some special duty is undertaken for the employer. In Haddock v. Edgewater Steel Co., 263 Pa. 120, 106 A. 196, an employee was directed by his employer to go to a distant city and gather information for his employer. On his return, while going from a railroad station to his home late at night, he was fatally injured and it was held that he was, at the time of the injury, in the course of his employment. In Cymbor v. Binder Coal Co., 285 Pa. 440, 132 A. 363, a workman employed in a mine during the day was also employed to go to the mine during the night to start the mine pumps which required but a moment and for which he received extra pay on a time basis. He was injured while returning home and it was held that he was engaged at the time in furthering his employer's business and his death was compensable. We have also a line of cases dealing more particularly with situations where transportation was furnished the employee by the employer as a part of his agreement of employment. In Logan v. Pot Ridge Coal Co., 79 Pa. Superior Ct. 421, the employee was engaged as an engineer in its mine and his regular hours of employment were from 7:00 A. M. to 4:00 P. M., during which time all his actual work was performed. As part of the contract of employment the company furnished a motor truck by which its employees were hauled from Windber to the mine, a trip of several miles. While in the truck on a return trip and at about 4:30 P. M., the employee was fatally injured. The death was held compensable. In Dunn v. Trego, 279 Pa. 518, 124 A. 174, there was a shortage of labor at a town where the employer was engaged in building operations and the claimant was engaged as a lather. The agreement was that he was actually to work ten hours between 7:00 A. M. and 5:30 P. M., but was to be paid for eleven hours. While it was not specifically agreed that transportation would be furnished him, he was told to report at a garage in Philadelphia

at 6:00 A. M. for the purpose of riding to his place of employment. After working several days and while returning from his work, the truck struck a rut and the employee was injured. It was held that the injury occurred in, the course of his employment.

There is also a line of cases in which it has been held that the furnishing of the transportation must not be for the sole convenience of the employee but by order of the master, express or implied: Haley v. Phila., supra. The case upon which the board and the court relied and one most closely resembling the case we are considering is that of Knorr v. Central R. R. of N. J., 268 Pa. 172, 110 A. 797. The employee was there engaged as an extra fireman. The company furnished him a pass over its railroad and a plane train (an independent operation of the company) to ride to and from his work. During the day he was assisting in taking a train from Ashley to Taylor and on returning the same day with a train he arrived at Ashley where he registered and checked out. After attending to some personal business in that town, he proceeded by way of the plane train to his home and while riding on this train was accidentally killed. Mr. Justice KEP-HART, in rendering the opinion of the court in that case, said (p. 175) : "This service from the place of residence to the place of work, using the facilities furnished by the company, was useful to the company; and the place of residence, while a matter of convenience to him, was nevertheless beneficial to the employer, being within easy reach of his place of work, and appellant [the company] would require it to be so. His transportation may be regarded as a privilege incidental to the contract of service, if it is not a part of his compensation ...... The pass was therefore beneficial to both employer and employee and, when his labors were over, the mere fact that he stopped for a short time to transact business in the town, would not break the continuity

of his general employment which arose after his special labor had ceased, when he had registered, checked out, and left the premises to go to a railroad independent, disconnected, and separated from the line upon which he was working." It also appeared that the employee there did not have regular assigned employment but was subject to call at any time as the occasion made demand for his services.

The referee found, and his findings were affirmed by the board, that the city of Reading furnished Bock with an automobile owned by it for a number of years, and the car was kept in repair and furnished with gasoline and oil required for the purpose of going to and from the plant; that 'when he sustained his injury he was on his way home from the city of Reading, using the facilities furnished by the city of Reading; that while the transportation furnished him by the city of Reading, if not a part of his compensation, was a privilege incidental to the contract of service, and that the use of the car furnished by the city of Reading was both beneficial to the employer and the employee and that when he sustained his accidental injury he was in the course of his employment with the defendant."

The courts of this state, as well as those of other states, have, since the enactment of this form of legislation, placed a liberal construction on compensation laws (Maguire v. James Lees & Sons Co., 273 Pa. 85, 88, 116 A. 679; Dunn v. Trego, supra), and with that attitude in mind we cannot say that the court below erred in holding that Bock was injured in the course of his employment. As the referee and board found, the furnishing of an automobile to the deceased for the purpose of transporting him between his home and his place of employment was just as much a part of the contract of employment as the money compensation which he was to be paid. Councilman Smith testified that he "agreed" to furnish the automobile. The reso-

lution of council authorizing his employment did not fix his salary or prescribe the terms of his employment. It was necessary for him to be at the plant at an early hour in the morning before there were public facilities in operation upon which he might have secured transportation, and it was important that he be there to see that the fires were started and that the plant could be efficiently operated by its other employees. We believe that the fact-finding bodies were fully justified in inferring that it was to the interest of the city that he have the means of getting to the plant at an early hour as well as at other times when his service might be required. While there is not any evidence as to its being necessary for him to be at the plant at other times, there is evidence from which an inference could be drawn that he was employed on account of his special fitness for the task. He was paid greater wages than those of a day laborer and was persuaded to leave the employ of another concern which had formerly furnished his services to the city, and he was given the same facilities of transportation by the city that had been furnished by his former employer when Bock was performing services for the city of Reading. In fact, we do not see how any other conclusion could be drawn than that it was part of the agreement for his employment that he would be furnished transportation. Just as in Dunn v. Trego, supra, transportation was in fact furnished and the director of his department testified that this transportation was furnished to Bock when the city dealt with his former employer and that when he came into the direct employ of the city of Reading they furnished him the same facilities. We believe the evidence justified the conclusion of referee and board that the automobile was not furnished to Bock for his mere convenience. We are also of the opinion that these inferences may be drawn by the court. There is not any dispute here as to the material

evidence for it came almost exclusively from the city by its employees and councilman, and the question involved is a mixed question of law and fact: Schott v. P. R. R. Co., 76 Pa. Superior Ct. 582, 583.

Appellant also suggests that there was evidence showing that Bock left his place of employment before 4:00 P. M. and was not found until at least 6:30 P. M. We do not regard these facts as controlling. There was just such a situation in Dunn v. Trego, supra. When Bock was injured he was on the direct line of travel between the plant and his home, and even though he may have transacted some private business in Reading, such fact would not defeat the claim. We have the further fact to consider that no one testified or gave any evidence from which it could be inferred just how long before Bock was found the accident actually occurred.

It is further urged that no resolution of council has been shown specifically authorizing the councilman to make a contract with Bock for the use of the automobile. Conceding this to be true, it does not follow that the claimant is not entitled to compensation. "It is well settled that contracts which are within the scope of the corporate powers but not authorized by proper action of the municipal corporation, that is, contracts not ultra vires, may be ratified by the proper corporate authorities, but contracts beyond the corporate powers, that is, contracts which the corporation is not permitted legally to enter into are not subject of ratification": 3 McQuillin Municipal Corporations (2d Ed.) §1358. Also, see Hamilton Ave., 48 Pa. Superior Ct. 156. Not only did the council by resolution authorize the employment of Bock as foreman of the garbage disposal plant of the city, but for ten years it paid him his salary, furnished him with a car, and bore the expense of repairs and gasoline and oil. This, to our minds, constituted a clear case of ratification and was sufficient to

476

estop the city from denying the contract. In the situation that we find, the city cannot now avoid responsibility for compensation.

Judgment of the court below is affirmed.