[Civil No. 3835.   Filed July 15, 1937.]

[70 Pac. (2d) 331.]

LESTER T. COX and A. B. COX, a Partnership Doing Business Under the Firm Name and Style of W. H. COX & SONS, Appellants, v. H. H. ENLOE and POCOHONTAS ENLOE, His Wife, Appellees.

Messrs. Darnell, Pattee & Robertson, for Appellants.

Messrs. Cusick & Lyons, for Appellees.

LOCKWOOD, J.—Lester T. Cox and A. B. Cox, a partnership doing business under the firm name and style of W. H. Cox & Sons, hereinafter called defend-

ants, have appealed from a judgment in favor of H. H. Enloe and Pocohontas Enloe, his wife, hereinafter called plaintiffs. The case arose out of an automobile collision between a truck belonging to defendants and driven by R. M. Ewing and a passenger car driven by H. H. Enloe in which his wife was riding at the time of the accident. There is singularly little dispute in regard to the facts of the case, and we state them as follows:

Defendants were engaged in the fruit and produce business in the city of Tucson, and R. M. Ewing was employed by them as a truck driver. His general duties were to drive the defendants' truck from Tucson to Nogales, and from Tucson to Phoenix, and bring back fruit or produce from these points to Tucson. On June 26, 1935, he had made a trip to Nogales and returned to Tucson about 6 o'clock in the afternoon. Upon his return he saw defendant L. T. Cox and was instructed by the latter to go immediately to Phoenix to procure a load of fruit and vegetables, and bring them back to Tucson. This, of course, necessitated a night trip and a return to Tucson in the early hours of the morning. The drive to Nogales had been in the daytime, and on that trip Ewing had not taken his coat with him. He immediately told Cox that before he went to Phoenix he wanted to go home and get his coat and his dinner. To this request Cox assented. The usual route to Phoenix for purposes of this kind was to go from the place of business of defendants to Stone Avenue, thence out Stone to Drachman, and thence to the Oracle Road, and on to Phoenix. Ewing's home was in the 3500 block on East Lee Street, and in order to reach it, it was necessary for him to drive in a general easterly direction some thirty-five blocks, and then return to the regular route to Phoenix. After receiving his instructions and permission to go

to his home, Ewing drove the truck to a service station at the corner of Speedway and Stone Avenue, for the purpose of having it serviced for the trip, this being on the regular road to Phoenix. It had been Ewing's intention, while the truck was being serviced, to call his wife by telephone and have her bring his private car to the service station to take him back to his home for dinner, and, after securing his coat, to return in the same car to where the truck was serviced. He attempteed to get in touch with his wife over the telephone but was unable to do so, and after several of these attempts had failed, took the defendants' truck and started for his home. Nothing had been said between himself and Cox as to whether he should or should not use the truck to go and get his dinner and his coat. On the way towards his home, and at a point over a mile from the service station he collided with a car driven by the plaintiff Enloe, by reason of which collision Mrs. Enloe received certain injuries.

██ There are fifteen assignments of error, which raise six questions of law. We will consider first whether the jury was justified in finding from the evidence that at the time of the accident Ewing was acting in the course of his employment, as this is the principal question involved in the appeal. Under the rule of *respondeat superior,* the negligence of an employee is imputed to his employer, and the latter must answer in damages for such negligence. This rule, however, is subject to the qualification that if the employee at the time of the accident had abandoned his employment and was engaged in personal and private affairs not connected with the business of the employer, there is no liability on the part of the latter. *Otero* v. *Soto,* 34 Ariz. 87, 267 Pac. 947; *Schneider* v. *McAleer,* 39 Ariz. 190, 4 Pac. (2d) 903; *Peters* v. *Pima Merc. Co.,* 42 Ariz. 454, 27 Pac. (2d) 143. It cannot be questioned that Ewing, in going to his home for the

purpose of getting his coat and his dinner, was .departing materially from the direct route which would naturally be followed by him in going to Phoenix for a load of produce, just as the employee in the case of *Peters* v. *Pima Merc. Co., supra,* had departed from his regular route. The vital question, however, is whether, notwithstanding this departure from the ordinary route, the purpose for the departure was to some degree reasonably and necessarily in the furtherance of the business of the employer, for if it was, the mere fact that it might also further the business of the employee would not be sufficient to take the case out of the rule of *respondeat superior*. The particular purpose for which he left the regular route was to secure his coat and to get his dinner. Were these purposes reasonably incident to the employers' business? Ewing had already been on duty during most of the day, for he had made a trip to Nogales and back, a total distance of approximately 150 miles. He was instructed to go immediately to Phoenix and return, a trip of at least 250 miles, and during the night time. We think it is decidedly in the interest of any employer not only that a vehicle operated by one of its employees should be in proper condition for the service it is expected to perform, but that the employee himself— the human machine—should be cared for in the same reasonable manner. Had the accident occurred while Ewing was taking his employers' truck to the regular place where it should be properly prepared for the trip to Phoenix, no one would contend for a moment that he was not directly and properly engaged in his employers' business. Shall we then say that the human machine may not be serviced in the same manner so that it may perform properly its function? Certainly food for the driver of the truck is just as necessary for the proper performance of his duty as is gasoline and oil for the truck itself. Further, we

know that even in the warm climate of southern Arizona, the temperature in the early hours of the morning, especially on a desert trip, frequently drops to such an extent that a coat, unnecessary and useless during the hours of the day, is necessary for the reasonable comfort and efficiency of the driver of an automobile at night. We think that under the circumstances of the present case, a jury might well find that it was just as necessary for a successful trip to Phoenix and back that night that Ewing should secure his coat and his dinner as that the truck should secure its oil and gasoline. Defendant Cox evidently considered this to be true, for when Ewing stated that he wished to go home for his coat and dinner, he promptly assented. It is true that nothing was said, in so many words, as to whether he should or should not use their truck or his private conveyance for this purpose. The evidence shows that he did endeavor to save time by using a private conveyance to reach his home while the truck was being serviced, but that being unable to do this, he used the truck. We think the jury could reasonably assume that this was done in an effort to further the business of his employers by starting on the direct trip to Phoenix earlier than he could have done had he waited till he could communicate with his wife. This was not a case where an employee, with fixed hours of labor, is presumed to eat his meal on his own time, before and after those hours. It is rather one where an employee was called on, suddenly and without warning, to make an emergency trip which reasonably required preparation on his part, necessitating a hurried visit to his home. The whole course of Ewing's conduct was such that the jury might well reasonably assume that he, with the consent and knowledge of his employers, was doing everything possible to further the business of the latter, and that he did not depart from that employment when

he was going home for his coat and his dinner. The situations in the Otero and Peters cases, *supra,* were entirely different. In the one case the trip was for the personal pleasure of the employee, and without the knowledge and consent of his employer. In the second case, the employee made a wide departure from the course which he should have followed in the business of the employer for a purpose which, by no stretch of the imagination, could be held to further the business of the latter. We are of the opinion that the court properly submitted the question to the jury as to whether or not Ewing, at the time of the accident, was acting in the due course of his employment, and that the jury did not err in finding that he was.

The next question is whether there was any evidence of negligence on the part of Ewing to go to the jury. The record shows a third car pulled out into the street in front of Ewing's truck, and in endeavoring to avoid colliding with the latter, he swung so far to the left that he hit the Enloe car. We think under all the circumstances it was a question of fact for the jury as to whether Ewing's conduct at the time was that of a reasonably prudent man.

We then consider certain instructions upon the measure of damages. The record shows the verdict was based upon certain alleged injuries received by Mrs. Enloe. The principal one claimed by her was the recurrence of a tubercular condition which had existed some years before the accident and which, according to the testimony in her behalf, had become completely arrested. It is the contention of defendants that aggravation or recurrence of existing or pre-existing physical maladies are special damages and must be specially pleaded. The complaint alleges that Mrs. Enloe was suffering, among other things, from active pulmonary tuberculosis as a result of the injury, but does not specially state that this was a recurrence of

an old condition. The court, in its instructions, first told the jury that if the injury caused a recurrence of a condition that previously existed, the plaintiff was entitled to recover all damages which resulted from such recurrence. The courts differ greatly as to whether it is necessary to plead as special damages the aggravation or recurrence of pre-existing or existing physical disability. The courts of Oregon and Michigan hold that such a plea is required. Those of California, Georgia, Indiana, Mississippi, Missouri, North Carolina, Texas, Virginia, Washington, and West Virginia take the contrary view. In the case of *Campbell* v. *Los Angeles Traction Co.,* 137 Cal. 565, 70 Pac. 624, 625, the court said:

" . . . the thing involved was not special damage, requiring special averment, although appellant cites two or three cases which seem to support its contention. Physical suffering and injury caused by violence to the person are the natural and direct consequences of the wrong, and are not in the nature of special damage, which must be particularly averred. The latter arises only where damage is sought for indirect consequences which are not the natural and usual result of the wrong, as loss of service, particular damage caused by slander, etc. The liability of one who commits an assault and battery or other unlawful violence to the person of another is not to be measured by the physical strength of the party injured, or his capacity to endure suffering. One of weak physical structure, or small vitality, or in ill health, has as much right to protection from violence as a robust athlete; and in either case the physical injury, the bodily harm, which is actually caused by the violence, whether he be strong or weak, healthy or sickly, is the natural consequence of the wrong, and need not be specifically averred."

The question is one of first impression in this state, and we think the majority rule is the better one, and that the court did not err in instructing the jury that

Mrs. Enloe was entitled to recover for a recurrence of a previous existing condition.

It is also contended that the court's instruction upon aggravated and accelerated injuries was incorrect. This court has held in the case of *Tucson Rapid Transit Co.* v. *Rubaiz*, 21 Ariz. 221, 187 Pac. 568, that an allegation of recurrence included aggravation, and since, as we have said, it was not necessary to plead recurrence in order to prove it, under the rule that the greater includes the less, we think it was still less necessary to plead an aggravation. In the present case, we think that the jury, under the pleadings and the evidence, might properly consider both an aggravation and a recurrence of a tubercular condition as bearing on the question of damages.

The next two questions are in regard to the admission of evidence. The first is whether the testimony of the witness Brainard should have been stricken. He testified to seeing a collision between a truck and a sedan on the day of the accident, in the general neighborhood of where the accident in the present case occurred, but could not positively identify it as the particular accident involved in this case. It is urged that the evidence was immaterial for this reason. We think the probability of some other collision between a truck and sedan occurring at that precise time, within the area limited by the witness, is so remote that the jury might properly assume that it was the collision which it is admitted occurred between defendants' truck and the car of plaintiff. The city of Tucson is not so large, nor are accidents so frequent therein that such an inference would be purely within the realm of speculation.

The other was that the witness Ewing should not have been permitted to answer the question as to whether he was also intending to get his driver's license which was within his coat, on the ground that

it was not proper cross-examination, and that the driver's license was purely a personal matter, and one not affecting the liability of the defendants. Assuming, without admitting, that it was error to permit this question, we cannot see where such error could have affected the result of the case in any manner.

The last question is as to whether the amount allowed by the jury is so excessive that it showed passion and prejudice. We have examined the evidence on this point carefully. The jury might have found therefrom that Mrs. Enloe had fully recovered from a case of tuberculosis, and that by reason of the accident there had been a recurrence of the disease to such an extent that at the time of the trial she was totally disabled from work and that her ultimate recovery was problematical, and at best would require a long period of absolute rest and professional nursing. Under these circumstances, we cannot say that the verdict of $8,000 was so excessive as to show passion and prejudice on the part of the jury. This disposes of all the assignments of error.

Since it appears that there was evidence sufficient to support the verdict, and that the instructions correctly stated the law, and that even if there was error in the admission of evidence, it was not such as might have affected the verdict, the judgment is affirmed.

McALISTER, C. J., and ROSS, J., concur.