**240 P.2d 550**

**STRAUSS et al. v. INDUSTRIAL COMMISSION.**

**No. 5574.**

Supreme Court of Arizona.

Feb. 4, 1952.

Rehearing Denied March 4, 1952.

John W. Ross, Tucson, for petitioners.

Robert E. Yount, Phoenix, H. S. Mc-Cluskey and Robert W. Pickrell, Phoenix, of counsel, for respondent Industrial Commission.

LA PRADE, Justice.

This proceeding is before us on certiorari to review an award of the Industrial Commission of Arizona denying the claim of the widow and minor children for death benefits under the provisions of the Arizona Compensation Act. A.C.A.1939, § 56–901 et seq. The finding of the commission was that the death of the deceased employee (husband and father) was not caused by injury arising out of and in the course of his employment. The factual situation concerning the employment arrangement must be carefully considered and for this reason will be more particularly set forth:

The employer, Seymour Roth, was in the used car business on South Stone Street in Tucson, Arizona, the place of business being a few blocks south of Broadway. The evidence discloses that the owner, Mr. Roth, paid little or no attention to the business except in a supervisory capacity. The deceased, Anton Strauss, was the sole em-

ployee and in such capacity was general manager, and as such bought, sold and traded cars as his judgment dictated. He took care of all the banking operations, transfers of title, liens, etc., with no regular hours of employment. He usually reported to the lot around 9 o'clock in the morning and stayed until 9 or 9:30 at night. Oftentimes the business required the repossession of cars which required him to work at nights and be away from home. His place of residence was approximately five miles from the place of business. In order to go to and from his home, he was permitted to use any of the cars on the lot belonging to the employer. His contract of employment called for a weekly wage of $50 and "a percentage of the used car sales at the end of the year if he would agree to work for $50.00 a week in the meantime." The evidence does not disclose what this percentage was to be or when it was to start. The wife of deceased testified that Mr. Strauss was supposed to work six and one-half days per week but due to the nature and demands of the business that Mr. Strauss was seldom able to leave his employment until late Sunday afternoons. Due to the fact that the owner did not come to the premises on Saturday, Mr. Strauss found it necessary to enlist the services of his wife who usually came to the premises on Saturdays and assisted in the banking operations, running business errands, interviewing customers, etc. Neither Mr. nor Mrs. Strauss received any compensation for the services of Mrs. Strauss. On the Saturday, the day of the fatal accident, Mrs. Strauss came to the premises at about 10 o'clock in the morning and brought some of their children, who on becoming restless were sent home. Later in the afternoon she returned to the home and again brought the children back with her. Due to the exigencies of the business situation, neither she nor Mr. Strauss were able to leave the premises until approximately 8:30 p. m. at which time they left in a car belonging to the employer.

During the day Mr. Strauss had made an engagement with a Mr. Orean to talk over with him some complaints that Mr. Orean had made concerning a truck that he had previously purchased from the employer through Mr. Strauss. It was contemplated that this engagement was to lead to a settlement or the taking back of the truck and selling a new unit to Mr. Orean. This meeting was to take place at 9:30 p. m. at the home of Mr. Orean which was within a block or so of the home of Mr. Strauss. At the time that Mr. and Mrs. Strauss left the place of employment, Mrs. Strauss realized that she had failed to purchase groceries for the following day, Sunday. They determined to and did then drive north on Stone Avenue to Speedway which is approximately a mile north of Broadway. They then proceeded east on Speedway, a distance of more than three miles to a market where Mrs. Strauss

purchased groceries. While in the market, Mr. Strauss met and talked to a business acquaintance. As a result of this meeting, they agreed to meet at the employer's place of business the next morning at 8:30 for the purpose of negotiating a car deal. On leaving the market, Mr. and Mrs. Strauss continued east on Speedway to Alvernon Road and then turned south. The place of the accident was about half-way between Broadway and Speedway at the intersection of Alvernon with Fifth Street. Had the accident not occurred, Mr. Strauss would have proceeded some five blocks to Broadway and continued on south approximately ten blocks to Montecito and thence east a block or two to where he lived.

It is the position of the commission that Mr. Strauss had abandoned his employment and was on a mission of his own at the time of the accident. Its contention is that Strauss at the place of the accident was five blocks north of where he should have been had he taken the most direct route home.

Petitioners' contention is that the findings and order of the commission are not supported by the evidence and are contrary to a reasonable interpretation thereof.

As a general proposition, the liability of an employer ceases when the employee leaves the premises where he is employed. Ordinarily, the compensation law does not apply to an employee while going to and returning from his place of employment. Butler v. Industrial Commission of Arizona, 50 Ariz. 516, 73 P.2d 703, 705; McCampbell v. Benevolent & Protective Order of Elks, 71 Ariz. 244, 226 P. 2d 147; Harris v. Industrial Commission, 72 Ariz. 197, 232 P.2d 846. The basis for the so-called "going and coming" rule is that injuries received while going to and coming from work normally do not arise out of or occur in the course of the employment. Of course, there are many exceptions to this rule, as where the employee is paid for the time consumed in going and coming to his employment. (For collection of cases and annotation, see 87 A.L.R. 250.) Another exception is where transportation is furnished at the expense of the employer and it is made to appear that the time consumed in going and coming is for the employer's benefit. Southern States Mfg. Co. v. Wright, 1941, 146 Fla. 29, 200 So. 375; Cary v. State Industrial Commission, 1931, 147 Okl. 162, 296 P. 385; Fritzmeier v. Texas Employers' Ins. Ass'n, 1938, 131 Tex. 165, 114 S.W.2d 236; Rader v. Keeler, 1933, 129 Cal.App. 114, 18 P.2d 360; Bock v. City of Reading, 1936, 120 Pa.Super. 468, 182 A. 732. The "going and coming" rule and the rule that the employee must be rendering service at the time of injury are not of inevitable application. A review of these border-line cases discloses that each case must be decided on its particular fact situation.

It is clear that a case falling strictly within the "going and coming" rule does not involve a factual and legal situation comparable to that involved in the instant case. Here we have an employee whose normal day's work began at 9 o'clock in the morning and terminated around 9 o'clock at night and necessitated working Sundays until in the late afternoon.

Attention, at this time, is directed to an annotation in 145 A.L.R. 1033 (supplementing earlier annotations in 10 A.L.R. 169, 21 A.L.R. 1223, 24 A.L.R. 1233 and 62 A.L.R. 1438) entitled "Workmen's compensation; injury while riding to or from work in employer's conveyance as arising out of, or in course of employment", wherein are collected hundreds of cases from practically all of the states of the Union treating upon this subject. Running through these cases is the thought that the employer by furnishing transportation enabling an employee to transport himself from his home to his place of employment and return home has agreed that the employment shall be continuous during such travel periods. The courts frequently emphasize that such rule has special application to cases where the employee is required to work extra hours. This thought was expressed by the United States Supreme Court in Voehl v. Indemnity Ins. Co., 288 U.S. 162, 169, 53 S.Ct. 380, 383, 77 L.Ed. 676, 87 A.L.R. 245, in the following language: "While service on regular hours at a stated place generally begins at that place, there is always room for agreement by which the service may be taken to begin earlier or elsewhere. Service in extra hours or on special errands has an element of distinction which the employer may recognize by agreeing that such service shall commence when the employee leaves his home on the duty assigned to him and shall continue until his return. *And agreement to that effect may be either express or be shown by the course of business.* In such case the hazards of the journey may properly be regarded as hazards of the service, and hence within the purview of the Compensation Act." (Emp. sup.)

■ We are of the opinion that a fair interpretation of the evidence before the Commission in this case reasonably demonstrates that practically all of the waking hours of this employee were dedicated to his employment, and that in providing the employee with transportation, it was part of the contract of employment and that the time consumed in the transportation was more than an incident of the employment but was rather an integral part and parcel of the employment. Since his place of residence was approximately five miles distant from the employer's situs of business, the employer apparently recognized that, in view of the weekly wage paid, the employee could not devote the hours and attention required unless transportation was furnished. That there was an agreement that the automobile be furnished and used to promote the employer's affairs, although not express, can reasonably and should be implied from their course of conduct and the circum-

stances of the employer's business. Having reached this conclusion, we are compelled to hold that the employee was not within the so-called "going and coming" rule, and that the hazards surrounding his going and coming were hazards of the employment and hence within the purview of the compensation act.

The question which now presents itself is, did the employee enlarge the hazards in not taking the shortest route home? In other words, had he abandoned his employment for the time being for purposes of his own? We are convinced that each of these questions must be answered in the negative. We reach this opinion after taking into consideration all the circumstances surrounding the employment. Mr. Strauss practically had carte blanche authority and was required to devote all of his energies to promoting the business of his employer and due to the inherent characteristics of the business was required to work both off and on the premises at any and all hours. No express limitations to streets or routes had been placed upon his going and coming to and from home or to places where he expected to conduct business. The reasonable inferences to be drawn from the course of conduct of the business suggest that Mr. Strauss was not limited or restricted to any particular street or the shortest route home or place of business appointment. We are of the opinion that in selecting the route to be traveled to keep the business engagement with Mr. Orean, this employee was not limited or restricted to proceed on the most direct route in order to be within the protection afforded by the compensation act. To hold that an employee circumstanced as was Mr. Strauss should travel only after due deliberation and reckoning and at his own peril should it be later determined that he was in error would be unreasonable and contrary to the spirit of the Workmen's Compensation Act.

We realize, and have so stated on many occasions, that the workmen's compensation law is not a general health and accident fund and that an employer is not the insurer of the welfare of his employees. Mr. Strauss might well have abandoned his employment by running personal errands totally disassociated from his employment such as going to picnics, shows, entertainments, etc. Respondents, in their brief, have stated that the commission did, and that this court should, take judicial notice of the fact that the deceased employee could have purchased his groceries on East Broadway rather than on Speedway. Acts of the employee for his personal comfort and convenience while at work such as taking a drink of water, lighting a cigarette, warming himself, do not interrupt the continuity of the employment. Pacific Fruit Express Co. v. Industrial Commission of Arizona, 32 Ariz. 299, 258 P. 253, 55 A.L.R. 975; Goodyear Aircraft Corp. et al. v. Industrial Commission, 62 Ariz. 398, 158 P.2d 511. See, also, Cox v. Enloe, 50 Ariz. 201, 70 P.2d 331, where an

employee was permitted to go home to eat and get his coat preparatory to making a special trip for his employer, and although no express authority was given him to use the employer's truck and the accident happened while driving the truck to his home, the court held the employer liable under the doctrine of respondeat superior, there being no abandonment of employment since use of the truck was reasonably contemplated. This exception is not limited to acts performed on the employer's premises. Western Pacific R. R. Co. v. Industrial Accident Commission, 193 Cal. 413, 224 P. 754. Injuries received at a time when the employee was crossing a street after having purchased a package of cigarettes, Western Pipe & Steel Co. v. Industrial Accident Commission, 49 Cal.App.2d 108, 121 P.2d 35, and when the employee had incidentally deviated from his route to dispose of a bucket of olives at his own home, Federal Mut. Liability Ins. Co. v. Industrial Accident Commission, 94 Cal.App. 251, 270 P. 992, were held to be such slight deviations as not to remove the employee from the benefits of the act. As was said in Employers' Liability Assur. Corp. v. Industrial Accident Commission, 37 Cal.App.2d 567, 573, 99 P.2d 1089, at page 1092: "If the particular act is reasonably contemplated by the employment, injuries received while performing it arise out of the employment, and are compensable. In determining whether a particular act is reasonably contemplated by the employment, the nature of the act, the nature of the employment, the custom and usage of a particular employment, the terms of the contract of employment, and perhaps other factors should be considered. Any reasonable doubt as to whether the act is contemplated by the employment, in view of this state's policy of liberal construction in favor of the employee, should be resolved in favor of the employee."

By analogy the act of stopping en route to buy groceries was such an act as was reasonably contemplated by the employment considering the number of hours worked and the time available for the employee to accomplish these necessary acts for his sustenance and convenience, and injuries received while performing such acts arise out of and in the course of the employment and are compensable.

Having determined that the employee was not within the "going and coming" rule, we conclude that he was in the course of his employment from the time he left the lot to go to the grocery store, on his way home, and then to the appointed place of the business appointment with Mr. Orean. In all events, after having transacted business for his employer at the grocery store, he was at the time of the accident proceeding in the course of his employment by the then shortest route to his home and the further business appointment.

The award is set aside.

UDALL, C. J., and STANFORD and DE CONCINI, JJ., concurring.

292

PHELPS, Justice (dissenting).

I am sorry I am unable to agree with the majority opinion in this case. It is my view that when the deceased closed the business of the secondhand car lot at about 8:30 o'clock in the evening and proceeded to a grocery store on Speedway for the sole purpose of purchasing groceries for the family to be consumed over the week-end he was in the performance of an act wholly outside the scope of his employment as manager of a used-car lot. The trip to the store was an independent act of his own for his exclusive benefit and in no way connected with the business of his employer. This is true even if we assume that the employer was liable for any injury sustained by him traveling the usual route to and from home. In leaving the usual course of travel and going approximately two miles out of his way for the purpose of purchasing groceries constituted an abandonment of his employment.

The rule is well stated in Restatement of the Law of Agency, section 234, p. 524, as follows: " * * * If the driving is an independent journey as distinguished from a mere detour, the servant is upon an enterprise of his own and the master is not liable for his conduct during the trip."

We said in the case of Cox v. Enloe, 50 Ariz. 201, 70 P.2d 331, 332, that: " * * * Under the rule of respondeat superior, the negligence of an employee is imputed to his employer, and the latter must answer in damages for such negligence. This rule, however, is subject to the qualification that if the employee at the time of the accident had abandoned his employment and was engaged in personal and private affairs not connected with the business of the employer, there is no liability on the part of the latter. * * *"

In the Cox case compensation was allowed but the facts were that Cox had driven his truck in from Nogales and upon arrival in Tucson was notified that he must leave immediately for a trip to Phoenix for a load of produce. It was necessary that the employee procure a coat because of the coolness of the nights. The court held that it was just as essential that he provide himself with clothing to make himself comfortable on the trip as it was to service the truck and in driving to his home some few miles off the main highway to Phoenix, Arizona, he was in the performance of an act connected with his employer's business.

The cases of Peters v. Pima Mercantile Co., Inc., 42 Ariz. 454, 27 P.2d 143; McCauley v. Steward, 63 Ariz. 524, 164 P.2d 465, and Johnston v. Hare, 30 Ariz. 253, 246 P. 546, all hold that where a person at the time of the injury, is in the performance of an independent act not connected with the business of his employer, that the relationship of master and servant does not exist. If the relation of master and servant does

not exist it follows that compensation cannot be allowed.

I cannot see how the fact that deceased was permitted to drive the car of his employer alters the case. In McCauley v. Steward, supra, the employee was given permission to drive one of the used cars of his employer to and from home and to use it in contacting prospective purchasers but when he drove the car a mile or two out of the way to see a lady friend it was held that he departed from his usual course of travel and at the time was performing an independent act in nowise connected with the business of his employer.

The fact that deceased intended to see someone in connection with the business of his employer after he delivered his groceries and left his wife at home can make no difference. The conference with the prospective customer was to be held after he performed the personal errand for himself and family. If, after deceased left home and delivered his groceries he again left home to see such prospective customer, such action would unquestionably restore the relation of master and servant between him and his employer and any injury then sustained by him would have been compensable.

The award, in my opinion, should be affirmed.