CONCURRING: VIRGINIA C. KELLY and PHILIP G. ESPINOSA, Judges.

269 P.3d 726

**James HIGGINBOTHAM, individually and as surviving husband of Darleen Lynn Higginbotham, Plaintiff/Appellant,**

v.

**AN MOTORS OF SCOTTSDALE dba Power Ford North Scottsdale; Driver Solutions, Inc., Defendants/Appellees.**

**No. 1 CA–CV 10–0690.**

Court of Appeals of Arizona, Division 1, Department B.

Feb. 2, 2012.

Begam & Marks, P.A. By David Neal Rosen, Phoenix, Co–Counsel for Plaintiff/Appellant.

Knapp & Roberts, P.C. By David L. Abney, Scottsdale, Co–Counsel for Plaintiff/Appellant.

Hill & Hill, PLC By R. Corey Hill and Ginette M. Hill, Phoenix, Co–Counsel for Defendants/Appellees.

DeCiancio Robbins, P.L.C. By Christopher Robbins, Tempe, Co–Counsel for Defendants/Appellees.

## OPINION

SWANN, Judge.

¶ 1 James Higginbotham ("Appellant"), individually and as the surviving husband of Darleen Lynn Higginbotham, appeals the superior court's summary judgment for AN Motors of Scottsdale d/b/a Power Ford North Scottsdale ("Power Ford") and Driver Solutions, Inc. (jointly, "Appellees"). For the following reasons, we vacate the judgment and remand.[1]

*FACTS AND PROCEDURAL HISTORY*

¶ 2 Jason Steven Hampton worked for Driver Solutions as an automobile-parts delivery driver based at Power Ford in Scottsdale. On the morning of June 4, 2008, he struck pedestrians Appellant and his wife with his vehicle. Appellant's wife died as a result and Appellant suffered serious injuries.

¶ 3 Appellant filed this action for negligence and wrongful death against Hampton and Appellees. He alleged Hampton was acting as the agent of Appellees at the time of the collision. Appellees moved for summary judgment on the grounds that they could not be held vicariously liable for Hampton's negligence because he was not in the course and scope of his employment when he

---

1. We originally issued our decision in this case as a memorandum decision. Appellees moved for reconsideration, and Appellants moved for publication—a motion Appellees joined. We deny the motion for reconsideration, and grant the motion for publication.

struck the victims. Over Appellant's and Hampton's opposition, the court granted the motion, ruling that the accident occurred during a time when Appellees had no control over Hampton and he was not acting to further their business in any way. Appellant timely appeals. We have jurisdiction pursuant to A.R.S. § 12–2101(B).[2]

## DISCUSSION

¶ 4 Appellant argues the superior court erred in determining as a matter of law that Appellees could not be held liable for Hampton's negligence under a theory of respondeat superior. A court may grant summary judgment when "there is no genuine issue as to any material fact and [ ] the moving party is entitled to a judgment as a matter of law." Ariz. R. Civ. P. 56(c)(1). We view the evidence in the light most favorable to Appellant, against whom judgment was entered, and determine de novo whether there are genuine issues of material fact and whether the trial court erred in its application of the law. *Unique Equip. Co., Inc. v. TRW Vehicle Safety Sys., Inc.,* 197 Ariz. 50, 52, ¶ 5, 3 P.3d 970, 972 (App.1999).

▪▪▪ ¶ 5 "An employer is vicariously liable for the negligent or tortious acts of its employee acting within the scope and course of employment." *Baker ex rel. Hall Brake Supply, Inc. v. Stewart Title & Trust of Phoenix, Inc.,* 197 Ariz. 535, 540, ¶ 17, 5 P.3d 249, 254 (App.2000).[3] Whether an employee's tort is within the course and scope of employment is generally a question of fact, and only becomes a question of law if the undisputed facts indicate that the conduct was clearly outside the scope of employment.

*McCloud v. Ariz. Dep't of Pub. Safety,* 217 Ariz. 82, 91, ¶ 29, 170 P.3d 691, 700 (App. 2007). Several factors are relevant to the determination of whether an employee's conduct falls within the course and scope of employment: (1) whether the conduct is the kind the employee is employed to perform or that the employer had the right to control at the time of the employee's conduct; (2) whether the conduct occurs within the authorized time and space limits; and (3) whether the conduct furthers the employer's business, even if the employer has expressly forbidden it. *Baker,* 197 Ariz. at 540, ¶ 17, 5 P.3d at 254; *Smithey v. Hansberger,* 189 Ariz. 103, 106–07, 938 P.2d 498, 501–02 (App. 1996) (citations omitted).

¶ 6 The factors in dispute here are whether Hampton's conduct occurred within the authorized time and space limits of his employment, and whether Appellees had the right to control his activity at the time of the collision. Appellant contends that Hampton was within the course and scope of his work at the time of the accident because he had not left his employment, but was merely taking a short refreshment break, as authorized by his employer. Appellees argue the superior court correctly concluded that Hampton was not in the course and scope of his employment because he was off-duty during his "downtime" between delivery runs, and they could not and did not exercise control over him during that time.[4]

▪▪▪ ¶ 7 "Under Arizona law, an employee is acting within the scope of his employment while he is doing any reasonable thing which his employment expressly or impliedly authorizes him to do or which may reasonably be said to have been contemplated by that

**2.** The court's judgment did not dispose of all claims and did not contain language of finality pursuant to Ariz. R. Civ. P. 54(b). On April 27, 2011, we suspended this appeal to allow Appellant to apply to the superior court for an amended order. The court entered an amended order containing Rule 54(b) language on May 23, 2011.

**3.** As neither Driver Solutions nor Power Ford argued in the superior court that they did not employ Hampton, we assume they did for purposes of our review.

**4.** This court applied the same principles but reached the opposite result in two recent cases.

In *Engler v. Gulf Interstate Engineering, Inc.,* 227 Ariz. 486, 258 P.3d 304 (App.2011), we held that an employee was not acting in the course and scope of his employment when he was involved in an accident in a rental car after his work day had ended. And in *Carnes v. Phoenix Newspapers, Inc.,* 227 Ariz. 32, 251 P.3d 411 (App.2011), we held that respondeat superior did not apply to a newspaper delivery driver who had finished work and was on her way home. Our analysis here is not inconsistent with that of *Engler* and *Carnes*—it merely serves to illustrate the fact-specific nature of the inquiry.

employment as necessarily or probably incidental to the employment." *Ray Korte Chevrolet v. Simmons*, 117 Ariz. 202, 207, 571 P.2d 699, 704 (App.1977). Our supreme court has recognized that an employee may take refreshment breaks without deviating from the course and scope of his employment. *See Cox v. Enloe*, 50 Ariz. 201, 205–07, 70 P.2d 331, 332–33 (1937) (holding jury could properly find that employee's departure from ordinary route to eat dinner and obtain his coat was "reasonably incident to the employer's business" because it ensured the employee's comfort while performing his duties).

■ ¶ 8 Hampton was employed to deliver automobile parts from Power Ford to other automobile service centers. Each day beginning at 7:30 a.m., he made three distinct delivery runs and was allowed two and one-half hours to complete each run. He was required to be in the vicinity of Bell Ford at 10 a.m., contact his dispatcher at that time, and pick up any parts that the dispatcher told him needed to be returned to Power Ford from Bell Ford. If he completed his morning deliveries before 10 a.m., he did not need to contact the dispatcher early, but had the remaining time until 10 a.m. to himself. He was permitted to stop for food, a drink, or cigarettes, or to run a personal errand.[5]

¶ 9 On June 4, 2008, Hampton completed his first delivery run at approximately 9 a.m. with a stop at a body shop on 19th Avenue and Deer Valley Road, where he picked up a fender and chassis to return to Power Ford. He then stopped at a store and purchased a soda. Upon leaving the store, Hampton traveled toward his home, where he intended to retrieve a package of cigarettes. The accident occurred shortly thereafter. Although his home was in the opposite direction from Bell Ford, he had sufficient time to arrive home and return to Bell Ford by 10 a.m.

¶ 10 We reject Appellees' assertion that, as a matter of law, Hampton was not in the course and scope of his employment because it spanned only the length of each specific delivery run—beginning when he left Power Ford and concluding when he made his final delivery—and that outside these times he was off-duty and beyond their control. The record shows that Hampton was paid a set salary no matter which delivery routes he was assigned, the length of time for each run would vary day-to-day, and he would need to return to Power Ford—often carrying automobile parts picked up in the course of his employment, such as those he was carrying when the accident occurred—to begin each run. Moreover, the record shows that the chassis was still in Hampton's truck when the accident occurred. In these circumstances, a jury could conclude that Hampton was employed throughout the day rather than only during his delivery runs, and that he had not exited the scope of his employment during the interval before his next scheduled reporting time.

■ ¶ 11 Further, from the evidence in the record, we cannot say as a matter of law that Hampton was outside the scope of his employment at the time of the collision. *McCloud*, 217 Ariz. at 91, ¶ 29, 170 P.3d at 700. Refreshment breaks do not necessarily take an employee outside the course and scope of his employment, but may be reasonably incident to the employer's business. *See Ray Korte Chevrolet*, 117 Ariz. at 207, 571 P.2d at 704; *Cox*, 50 Ariz. at 205–07, 70 P.2d at 332–33. *Cf. McCloud v. Kimbro*, 224 Ariz. 121, 125, ¶ 17, 228 P.3d 113, 117 (App.2010) (holding employee on out-of-town business was within the course and scope of his employment while traveling to and from a restaurant).[6] Both Hampton and his supervisor

---

5. Appellant contends Hampton was "on call" for emergency delivery runs during that time, citing Hampton's testimony that Driver Solutions might contact him for a "hot shot" run. However, Hampton testified that a "hot shot" run occurred when, after he had already embarked on his delivery route, the dispatcher contacted him to ask him to make a particular delivery immediately, and he would alter his route to do so. Hampton's testimony that he would often check in with the dispatcher as a courtesy when he finished his morning deliveries before 10 a.m. might support, but does not compel, the conclusion that he was on call during that time.

6. We reject Appellees' argument that the factual circumstances in *Ray Korte Chevrolet*, *Cox*, and *Kimbro* were so distinct from those in this case that they are inapposite. Each of those cases involved an analysis of whether the employer

testified that he was expressly authorized to stop for refreshments or to complete personal errands during his "downtime."

¶ 12 Appellees contend, however, that this autonomy indicates that they had no control over Hampton during that time and cannot be held vicariously liable for his negligence. They argue this case is controlled by *Peters v. Pima Mercantile Co.*, 42 Ariz. 454, 27 P.2d 143 (1933), which affirmed a ruling as a matter of law that an employee-driver had departed from his employment to such an extent that the employer could not be held vicariously liable for his tortious conduct. In that case, the employer directed his employee to drive from Marana to Tucson to pick up merchandise for the employer's store. *Id.* at 459, 27 P.2d at 145. The employee drove to Tucson and placed a portion of the merchandise in his truck, but then, without his employer's knowledge or permission, departed to a nearby veterinary hospital to retrieve an animal. *Id.* After placing the animal in the vehicle, the employee was involved in a collision while returning to pick up the remaining merchandise. *Id.* Because the employee's deviation from his employer's instructions was "marked and unusual," the court held as a matter of law that the employee was no longer on his employer's business. *Id.* at 462, 27 P.2d at 146.

¶ 13 Unlike in *Peters*, where the employer had specifically told the employee where he was to go and what he was to do, neither of the Appellees exercised here that degree of control over Hampton. He was given a list of deliveries that needed to be completed within a certain period of time (two and one-half hours), and he set his own route. In addition, the employer in *Peters* had no knowledge of the employee's personal errand, whereas Appellees allowed Hampton to take personal refreshment breaks or conduct personal errands without obtaining express permission. Given these material differences, *Peters* does not compel the conclusion that Hampton was outside the course and scope of his employment.[7]

¶ 14 Because material questions of fact exist regarding whether Hampton was within the course and scope of his employment at the time of the accident, the superior court erred in granting summary judgment for Appellees.

## CONCLUSION

¶ 15 For the foregoing reasons, we vacate the superior court's judgment for Appellees and remand this matter for further proceedings consistent with this decision.

CONCURRING: DANIEL A. BARKER and PATRICIA K. NORRIS, Judges.

---

could be held liable under a theory of respondeat superior for the conduct of an employee-driver allegedly acting outside the course and scope of his employment.

7. Similarly, we reject Appellees' assertion that Hampton could not have been within the course and scope of his work because he was running a personal errand. The case they rely on, *Poole v. Industrial Commission*, 174 Ariz. 448, 449, 850 P.2d 686, 687 (App.1993), concerned an employee who had finished his shift and returned home, then left to get a haircut and was involved in a motor vehicle collision on his way home from the haircut. The court determined that the employee was outside the course and scope of his employment because he had finished his work for the day, returned home, and then left to get a haircut, not because the nature of his errand was personal. *Id.* at 449–50, 850 P.2d at 687–88.