HENRY OSTERBRINK'S (dependents') CASE.

Suffolk.    January 9, 1918. — February 27, 1918.

Present: RUGG, C. J., DE COURCY, CROSBY, PIERCE, & CARROLL, JJ.

*Workman's Compensation Act.*

A man, who was employed as a door-tender to stand outside the door of the cool-
ing room of a pork packer to open the door when persons passed in or out, was
accustomed in warm weather to keep a bottle of drinking water under a sink
or tank in the cooling room, because there was no other convenient way of
getting drinking water in that part of the building for his luncheon.  For some
time this door-tender and other employees, with the knowledge of the fore-
man, had had bottles of tea and coffee which were placed in the cooling room to
be kept cool for use with their meals, and this was permitted by the super-
intendent and by the management, although the practice of the door-tender
of placing a bottle of drinking water under the sink in the cooling room for his
personal use was not known to the superintendent or to the management.  On
a morning in July the door-tender went into the cooling room, took a bottle
from under the sink and drank from it, supposing it to be his bottle of water.
The bottle contained muriatic acid and had been left there by the tinsmith
employees of the pork packer, who had been doing some soldering.  The acid
caused the death of the door-tender, and his dependent next of kin made a claim
for compensation under the workmen's compensation act.  *Held*, that a finding
was warranted that the death of the employee resulted from an injury arising
out of and in the course of his employment.
In the claim above described it also was *held*, that there was no error in ordering
the insurer to pay to the two surviving partly dependent daughters of the
deceased employee equal sums of money, there having been ample evidence to
support the findings as to the partial dependency of each of the daughters upon
the money which was contributed each week by the deceased employee to the
family fund for the support of the family.

APPEAL to the Superior Court under St. 1911, c. 751, Part III,
§11, as amended by St. 1912, c. 571, § 14, from a decision of the
Industrial Accident Board awarding compensation to the two sur-
viving daughters of Henry Osterbrink, late of the part of Boston
called Dorchester, as his dependent next of kin, he having been
at the time of his death on July 7, 1916, in the employ of John P.
Squire and Company, pork packers.

The case was heard by *Wait*, J. The material part of the evi-
dence is described in the opinion.  The judge made a decree in
accordance with the decision of the Industrial Accident Board,

ordering the insurer to pay the sum of $3.15 each week for a period of five hundred weeks from July 7, 1916, to Anna T. Osterbrink and to pay a like sum each week during the same period to Mary J. Osterbrink.

The insurer appealed.

*F. Hutchinson & P. B. Smith,* for the insurer.

*W. H. Sullivan,* for the dependents.

PIERCE, J. The deceased was seventy-two years of age, a faithful worker, a person of exemplary habits, and one who never took a drink of liquor of any kind. He was employed as door-tender by the subscriber. It was his duty to stand outside the door to the cooling room and to open that door to the men when anyone wanted to pass in or out with a truck. His duties began at seven o'clock in the morning, and he was expected to tend the door until relieved.

The temperature in the vestibule where he stood was in July the same as out doors while that in the refrigerating room was at or near freezing. There was a bubble fountain on the floor below from which employees could drink water. There was no provision for drinking water on the floor on which the deceased was stationed. There were two faucets in the cooling room with hose attached; there was not any drinking cup. Some of the men, when working in the refrigerating room, drank from a hose-pipe attached to a faucet at the sink or tank, and some used a small tin pail or can hung near the sink by some of the men for this purpose. The deceased at times drank from the rubber pipe and pail as the other men did. The hose-pipe was attached to the faucet in order to clean and flush the sink or the products placed therein as well as adjacent places.

For some time before and on July 7, 1916, the day of the injury, the deceased had kept water for his use in drinking in a bottle, which he placed for cooling on the floor of the cooler under the sink or tank near the wall. During the same time he and other employees, with the knowledge of the foreman, had bottles out of which they drank tea or coffee with their lunch. Bottles of tea or coffee were at times placed by some employees in the cooling room to be kept cool for use with the meals. The practice of putting bottles of tea or coffee in the cooler was known and permitted by the superintendent and the management; the practice of plac-

ing a bottle of drinking water under the sink in the cooler for the personal use of the deceased was not known to the superintendent or to the management.

At about half past nine o'clock of the morning of July 7, 1916, the deceased went into the cooler, took a bottle from under the tank and drank from it. The bottle contained muriatic acid, and the injury that followed the draught resulted in the death of the deceased. The deceased mistook the bottle containing muriatic acid, which he took from under the sink for his bottle of drinking water which he kept under the sink in or near the same place. The evidence warranted the finding that the bottle of acid had been left by tinsmith employees of the subscriber from their work in soldering, and does not support the contention that it was maliciously or in joke substituted by a tinsmith for the bottle of the deceased.

We are of opinion there was a causal connection between the employment and the accident. The placing of bottles of coffee or tea in the cooler had the sanction and approval of the subscriber. There is no evidence that it disapproved the cooling of water in bottles in the refrigerator, and it would be a natural and reasonable expectation that employees would place water in bottles in the cooler in summer time to relieve the thirst of the employees or to be drunk by them with their meals, in preference to drinking from the end of a rubber tube or from a bubble fountain after going to the floor below. We are also of opinion that the risk of drinking acid from a bottle which had been exchanged or substituted for a bottle of like appearance containing drinking water by an employee, whose work required the use of such a substance, was not too remote a danger to be found to be an incident of that employment. See *Hutchison* v. *M'Kinnon,* [1916] 1 A. C. 471; *Archibald* v. *Ott,* 77 W. Va. 448.

The insurer contends that there was error in ordering the insurer to pay to the two surviving partially dependent daughters equal sums, and claims that under St. 1911, c. 751, Part II, § 7, which reads "if there is no one wholly dependent and more than one person partly dependent, the death benefit shall be divided among them according to the relative extent of their dependency," "there must be evidence that the deceased contributed such and such an amount of money to Anna and such and such an

amount of money to Mary." The evidence was ample to support the findings as to the partial dependency of each of the daughters upon the sum of money which was contributed each week to the family fund for the support of the family.

*Decree affirmed.*