[Civil No. 4784. Filed April 30, 1945.]

[158 Pac. (2d) 511.]

GOODYEAR AIRCRAFT CORPORATION, ARI-
ZONA DIVISION, a Corporation, Petitioner, v.
THE INDUSTRIAL COMMISSION OF ARI-
ZONA, RAY GILBERT, EARL G. ROOKS and
FRED E. EDWARDS, as Members of Said In-
dustrial Commission of Arizona, and GEORGE H.
LAWS, Respondents.

Messrs. Moore, Romley & Roca, for Petitioner.

Mr. H. S. McCluskey, and Mr. David P. Jones, for Respondent Commission.

Mr. Darrell R. Parker, for Respondent Laws.

MORGAN, J.—Respondent Laws was employed by the petitioner as a guard at one of its warehouses in Phoenix. His hours of employment were from 3 p. m. to 11 p. m., with no time off for lunch. His instructions were to bring his lunch and eat it on the premises. He was credited with 8½ hours per day, the additional half hour being allowed which would ordinarily have been consumed if he had eaten off the premises. He had been in the employ of the petitioner for nine months.

On August 24, 1944, Laws drove to the warehouse shortly before 3 o'clock. He left his lunch, including a bottle of Royal Crown Cola, on the seat of the car parked near the door of the warehouse. At 3 p. m he relieved the guard who worked on the prior shift. At about the hour of 3:35 p. m. he stepped out to his automobile, returned with his lunch and the bottle of Cola. About two months before the company had furnished a water cooler for drinking purposes. The cooler consisted of a 25 gallon galvanized garbage can equipped with a faucet. It was mounted on a barrel, the top being about 4 feet 8 inches above the floor. It was filled with ice and some water twice a day, and

maintained for drinking purposes. It was the custom of Laws and other employees to cool bottles of beverages, such as Cola, which they had brought for their lunch or consumed on the job, upon the ice in this cooler. No rules or regulations existed against this practice. No other cooler facilities existed. In pursuance of this custom, Laws first washed off the bottle at a water faucet, raised the cooler lid to place the bottle of Cola on the ice. Before the bottle came in contact with the can or ice, and at a point opposite applicant's face—probably just over the cooler rim—the bottle exploded cutting his eye and hand, the injury resulting in the loss of the sight of one eye.

Claim for accident benefits under the Workmen's Compensation Law was filed by the employee with the respondent Industrial Commission, the insurance carrier. Hearing was had, and on November 6, 1944, the commission made findings of fact substantially as above set forth, and further to the effect that (1) Laws sustained an injury by accident arising out of and in the course of his employment; (2) that the personal injury entitled him to accident benefits. Petitioner's protest and application for rehearing were seasonably filed and, being denied, brought the case to this court for review by the statutory *certiorari* proceedings.

There is no controversy as to the facts. The assignments and propositions of the petitioner raise two questions. First, the injury suffered by respondent Laws was not in the *course* of his employment; second, the accident did not *arise out of* his employment. The petitioner and both respondents have presented the case with great zeal and marked ability. The briefs and arguments have been both lucid and comprehensive. The industry of counsel has failed to uncover an exactly parrallel case. We take it that none exists.

The facts being admitted, the sole question for our determination is one of law. Did the conceded

facts under the law authorize the commission to make the award? True, the commission made a finding that the accident arose out of and in the course of the applicant's employment. If there was any controversy as to the facts, such a finding would have to be considered as one of fact. Since, however, there is no issue as to the facts, and the situation is one from which different inferences may be drawn, the finding constitutes in effect a conclusion of law. To determine whether the conclusion is justified will require a consideration of the statutes, a review of the decisions of this court construing the act, and an examination of the authorities generally as to when an accident arises out of and in the course of employment.

▉▉▉▉ The purpose and intent of the law must be given effect, but due regard must also be had as to the respective rights of employer and employee. A burden or liability not within the terms or spirit of the law is not to be imposed upon industry. On the other hand, the act must be construed liberally to effect its purposes and to provide compensation for workers who suffer injury from accidents arising out of and in the course of their employment. No rule is to be adopted and applied which will make ineffectual the evident purpose of the law that those covered by the act who are injured while engaged in industrial work are to be compensated. When a machine is broken it must be repaired. When an appliance is worn out it must be renewed. When, through accident arising out of the course of his employment, a worker is injured, he should be allowed due compensation, and the cost for such compensation is a charge against industry to the same extent as repair to a broken machine.

Article 18, Section 8 of the Constitution of Arizona directed the legislature to enact a workmen's compensation law requiring compensation to be paid to workmen in case of injury from specified accidents arising out of and in the course of such employment.

The constitutional provision provided that such compensation should be paid where the accident "is caused in whole, or in part, or is contributed to, by a necessary risk or danger of such employment."

Pursuant to that mandate, the legislature has enacted what is generally referred to as the workmen's compensation law, now appearing as Sections 56-901 to 56-977, inclusive, Arizona Code Annotated 1939.

Section 56-931 provides that where an employee is injured by accident arising out of and in the course of his employment " . . . unless purposely self-inflicted, shall be entitled to receive, and shall be paid such compensation for loss sustained on account of such injury . . . ."

Again, in Section 56-936, the following appears:

"Every employee covered by insurance . . . who is injured, by accident arising out of and in the course of employment . . . provided, the same are not purposely self-inflicted, shall be paid such compensation . . . for loss sustained on account of such injury, . . . ."

In Section 56-930 it is provided that personal injury by accident arising out of and in the course of employment includes injury caused by the willful act of a third person directed against an employee because of his employment.

From the foregoing it will be seen that where an employee is injured by an accident arising out of and in the course of his employment he is entitled to compensation. He cannot be denied recovery unless his injury is purposely self-inflicted. His negligence or lack of care is no defense. Furthermore, the accident, if as defined in the Constitution, need not arise wholly out of and in the course of employment. Recovery can be had if the accident "is caused in whole, or in part, or is contributed to, by a necessary risk or danger of

such employment." No exception is made where injury or death is caused by an act of God.

This court on numerous occasions has construed the law and announced certain rules pertaining to what accidents come within the terms of the act. The first decision, *Ocean Acc. & Guar. Corp.* v. *Industrial Comm.*, 32 Ariz. 265, 257 Pac. 641, 643, has been widely cited, and has been particularly called to our attention by all of the parties in this action. We quote as follows:

" . . . it is indispensable that the injury should both arise out of and in the course of the employment. It is not enough that it occur in the course of the employment nor that it arise out of the employment. Both are essential and must be established by the claimant. . . .

"We believe the decisions, English and American, are agreed that the compensation laws should be given a liberal construction, with a view of effectuating their evident purpose of placing the burden of injury and death upon industry, and we are in entire accord with that construction. However, when it clearly appears that a claimant has failed to establish that his accidental injury arose out of and in the course of his employment, or either, the duty of so declaring cannot be evaded. On the contrary, if we entertain a serious doubt we shall feel it our duty not to hesitate to apply a liberal rule of construction in favor of the claimant.

"The Compensation Act is not an insurance law requiring the employer to compensate every injury an employee suffers while in his employment, but only those accidental injuries that arise out of and in the course of the employment. As has been well said, to extend the law to cover all injuries sustained by an employee would be giving to employees protection against the common and everyday accidents to which all mankind is daily exposed and make them a privileged class. Compensation must therefore be limited to those employees within the intendment of the legislation providing for it, and not extended to include cases clearly without its intent and purview. . . .

"It is not sufficient simply to show employment and an injury during the period of employment. The employee must go further and show that the injury had its origin from a risk connected with the employment and that it flowed from that source as a rational consequence."

In *Pacific Fruit Express Co.* v. *Industrial Comm.*, 32 Ariz. 299, 258 Pac. 253, 254, 55 A. L. R. 975, the court again considered what was meant by the phrase, "arising out of and in the course of employment," in a case where the employee for his own comfort seated himself under a car to converse with co-workers. While so engaged he was injured. The court pointed out that "he abandoned his work and for the time being was doing nothing he was engaged to do," and held that in such a case the accident did not arise out of and in the course of the employment. The following statement was made:

" . . . What he was doing at the time of his injury was not reasonably necessary to his health or comfort, such as quenching his thirst, relieving his hunger, protecting himself from excessive heat or cold—acts generally recognized as incidental to his employment."

Again, in *Netherton* v. *Lightning Del. Co.*, 32 Ariz. 350, 258 Pac. 306, 308, this court was required to determine whether the death of an employee, who was killed by a bolt of lightning while driving his employer's truck in the due course of his employment, was compensable. The court called attention to the fact that under statutes such as ours, making either death or injury compensable for accidents arising out of and in the course of employment, two rules had been applied by the courts: One to the effect that such an accident was compensable as arising out of the employment; the other that the accident was not compensable unless by reason of his employment the workman was more exposed to injury by lightning than were others in the same locality. The opinion sets out

the standard as follows: "But the standard for testing those facts is always the same to wit, Did the employment increase the danger?" This rule was announced in the opinion of Justice Lockwood, and in the concurring opinion by Chief Justice Ross, the holding being that there could be no recovery in the case. Justice McAlister dissented on the ground that the deceased met his death not only in the course of his employment but arising out of it, within the meaning of the Workmen's Compensation Act. Apparently, however, he assented to the rule as stated by Justice Lockwood, "Did the employment increase the danger?" Even on the assumption that this is a correct standard to determine whether an accident arose out of the employment, it seems to us now that the majority misapplied the rule in that case. We will comment upon this later.

It will be observed that in the cases mentioned the court failed to take into consideration the constitutional definition of compensable accidents, appearing in Article 18, Section 8, Const. of Arizona. In a late decision, *In re Mitchell,* 61 Ariz. 436, 150 Pac. (2d) 355, the court was called upon to determine whether the death of an employee as a result of carbon tetrachloride poisoning was compensable under the terms of the act. The commission had made an award allowing compensation. The petitioners relied on our decision in *Pierce* v. *Phelps Dodge Corp.,* 42 Ariz. 436, 26 Pac. (2d) 1017, in which we had held that an accident must be some sudden or instantaneous effect or occurrence, the implication being that there could be no recovery unless there was an external act or occurrence, usually one of violence, which caused the injury or death. In commenting upon that rule, and in effect overruling the Pierce case, we said [150 Pac. (2d) 361]:

"Furthermore it appears that in the Pierce case we did not discuss or consider, probably because it was

not called to our attention, the phrasing of the constitutional mandate to enact a workmen's compensation law. Certainly the legislative intent can best be gleaned by reference to Section 8, Article 18 of the Arizona Constitution, which provides that 'compensation shall be . . . paid . . . if in the course of such employment personal injury to or death of any such workman from any accident arising out of, and in the course of, such employment, *is caused in whole, or in part, or is contributed to,* by a necessary risk or danger of such employment, or a necessary risk or danger, inherent in the nature thereof . . . .'

"It will be noted that the italicized part of the Constitution just quoted is broader and more comprehensive than the legislative enactment appearing under Section 56–936, Arizona Code Annotated 1939. A construction of the latter must be governed by the constitutional provision.

"Applying these principles to the instant case it is readily apparent that the poisoning of the deceased, which caused his death, was 'caused in whole, or in part, or was contributed to, by a necessary risk or danger of such employment.' "

The statement which we have quoted from the Mitchell case has full and complete application to the facts in that case since the accident was the result of a necessary risk or danger of the employment. Whether the constitutional definition is broader and more comprehensive generally than the legislative enactment, is a debatable proposition. The rules applied in Ocean Acc. & Guar. Corp. v. Industrial Comm., *supra,* and prior cases, with a single exception which we will advert to presently, may be harmonized with the rule of the Mitchell case.

 It is the law that in construing statutes in relation to constitutional provisions, the courts must take into consideration the principle that every statute has to be read in the light of the constitution. Thus, words or phrases used in the statute are presumed to have been used in the same sense as in the constitu-

tional provision on the subject, particularly if such constitutional provision is adopted shortly before the enactment of the statute. Except for potent reasons, courts are not to give to terms appearing in the statute a meaning different from that in which they are used in the constitution. 50 Am. Jur. 261, Statutes, § 273; *McCullough* v. *Commonwealth of Virginia,* 172 U. S. 102, 19 Sup. Ct. 134, 43 L. Ed. 382; *Anselmi* v. *Rock Springs,* 53 Wyo. 223, 80 Pac. (2d) 419, 116 A. L. R. 1250. This rule of construction, however, is not to be taken too literally, and can be given only partial application in the construction of the Arizona Workmen's Compensation Act.

■■ Sec. 8 of Article 18, *supra,* is not a grant of power to the legislature, but a command directing it to exercise a power which it already possessed. The constitutional mandate does not restrict the legislature in its inherent powers to go beyond the terms of the Constitution in making injuries from accidents, which are not mentioned therein, compensable. *Home Acc. Ins. Co.* v. *Industrial Comm.,* 34 Ariz. 201, 269 Pac. 501; *Atkinson, Kier Bros., etc.,* v. *Industrial Comm.,* 35 Ariz. 48, 274 Pac. 634. While obviously the Workmen's Compensation Act must be construed to cover all accidents as defined in the Constitution, this does not mean that accidents which are not comprehended within the constitutional definition may not be made compensable by the legislature. The rule of construction of statutes in relation to constitutional provisions must be applied to the extent of construing the act to cover all accidents as defined in the Constitution. But this is not to say that other accidents which may be comprised within the statutory term "arising out of and in the course of employment" beyond those embraced within the Constitution definition, are not compensable.

■ It seems evident that when an accident to an employee in the course of his employment is caused

in whole or in part, or is contributed to by a necessary risk or danger of such employment, or a necessary risk or danger inherent in the nature thereof, this would be one *arising out of* the employment. The test to be applied in accidents mentioned in the constitutional mandate to determine whether they arise out of the employment is, were they caused in whole or in part, or contributed to by a *necessary* risk or danger of the employment, or *inherent* in its nature. The standard is not, did the employment increase the danger, or that by reason of the employment the workman is more exposed to injury than are others not so engaged. The standard in this case would be, was the risk or danger necessary or inherent in the employment.

The legislature did not confine compensable accidents to those produced by or caused by necessary risks or dangers of the employment. The law provides for compensation for any accidents arising out of and in the course of the employment. The act widens the fields of accidents. Every accident resulting in injury, unless willfully self-inflicted, comes within its provisions if it arises out of and in the course of the employment. The law does not define what "arising out of and in the course of employment" means. It does say that the phrase shall include an injury caused by the willful act of a third person directed against an employee because of his employment. Nowhere is there any limitation on what accidents may not be included within the phrase. Neither in terms nor by implication is there any limitation that the term "arising out of" shall be limited to cases where the employment increases the danger or where the workman is more exposed to injury than are others so engaged.

For these reasons, we feel compelled to disavow the rule of the Netherton case. Neither under the Constitution nor under the statute can it be held to be a proper measure to ascertain if an accident arises out of the employment. In justice to the court it is proper

to say that the rule adopted in the Netherton case was largely influenced by the decision of the Massachusetts court in *Re McNicol,* 215 Mass. 497, 102 N. E. 697, L. R. A. 1916A, 306. The McNicol case has, in effect, been repudiated by the Massachusetts court itself in *Caswell's Case,* 305 Mass. 500, 26 N. E. (2d) 328, 330, where an employee was injured by the collapse of the building in which he was working caused by a hurricane. In this case, the court said:

"The only other requirement is that the injury be one 'arising out of' his employment. It need not arise out of the nature of the employment. An injury arises out of the employment if it arises out of the nature, conditions, obligations or incidents of the employment; . . . ."

In the late case of *Harvey* v. *Caddo De Soto Cotton Oil Co.,* 199 La. 720, 6 So. (2d) 747, 750, the court had occasion to consider whether an accident to an employee, the result of a cyclone which demolished the employer's structure and injured the employee, was one arising out of the employment. We quote from the opinion:

" . . . the accident must be the result of some risk to which the employee is subjected in the course of his employment and to which he would not have been subjected had he not been so employed. . . .

"In determining, therefore, whether an accident 'arose out of' the employment, it is necessary to consider only this: (1) Was the employee then engaged about his employer's business and not merely pursuing his own business or pleasure; and (2) did the necessities of that employer's business reasonably require that the employee be at the place of the accident at the time the accident occurred?"

The court called attention to various laborious efforts by many courts in weighing the evidence in order to discern whether the hazards to the employee had been increased due to the employment, and then concludes:

"We prefer to place our decision on what we believe to be a sound footing, that is—that the deceased, by reason of his employment, was required to be in a building which fell upon him; that his death was due to the fact that his employment necessitated that he be at the place where the accident occurred and that, therefore, giving the compensation act the liberal interpretation to which it is entitled, the accident arose out of, and was incident to the employment."

█ It seems to be settled beyond any doubt that an accidental injury arises in the course of employment when it occurs, as in this case, within the period of employment at a time where the employee had a right to be in the performance of his duties and while either fulfilling his duties or engaged in doing something incidental thereto—here in caring for his lunch. *Employers' Liability Assur. Corp.* v. *Montgomery*, 45 Ga. App. 634, 165 S. E. 903; *Bryant* v. *Fissell*, 84 N. J. L. 72, 86 Atl. 458; *Weis Paper Mill Co.* v. *Industrial Comm.*, 293 Ill. 284, 127 N. E. 732; 71 C. J. 658, Workmen's Compensation Acts, § 404. In the present case since the employee had to eat on the premises, it follows that he had a right to properly care for his lunch. We feel, therefore, that the claim of the petitioner that the injury did not occur in the course of the employment is not sustainable.

█ From what has already been said it is apparent that the accident is not one which resulted from any necessary risk or danger of the employment, or inherent therein. It is not one of the accidents comprehended within the constitutional provision. It is one of the accidents which the law has provided for beyond those listed by the Constitution. The legislature had this right. The real question in this case, therefore, is, Did the accident arise out of the employment? In considering this phase, we are mindful of the rules which have been promulgated. The employer is not an insurer. If the accident occurs while the employee

is engaged in some act having no relation to his duties for his own comfort or otherwise, or has abandoned his occupation even temporarily, the injury does not arise out of the employment. The rule that the employer is not an insurer simply means that only accidents which are included within the terms of the act are compensable. The question here is, Do the facts in this case bring the accidental injury within the terms of the law?

To determine whether this case comes under the law, a consideration of the decisions of other courts will be helpful. An injury sustained by an employee while in the act of satisfying his thirst is generally held to arise out of the employment where the employee uses the facilities provided by the employer. *Bradshaw* v. *Aronovitch,* 170 Va. 329, 196 S. E. 684; 71 C. J. 671, 672. On the other hand, it has been held that where the employee does not use the facilities in the customary way and he is injured, the accident does not arise out of the employment. *Mann* v. *Glastonbury Knitting Co.,* 90 Conn. 116, 96 Atl. 368, L. R. A. 1916D, 86. Since, under our law, negligence does not bar recovery it would appear that this case would have no application here.

In *Bolden's Case,* 235 Mass. 309, 126 N. E. 668, where an employee was injured from a bursting bottle, which belonged to him, while he was filling it at a bubble fountain furnished by the employer, it was held that the injury did not arise out of the employment. The bottle was being filled by the employee for his own convenience in order that the chill might be taken off. The court said this was no part of the employer's business, and the use of the bottle in this manner was not sanctioned by the employer; the act was outside the scope of his employment.

In *Industrial Commission of Colorado* v. *Enyeart,* 81 Colo. 521, 256 Pac. 314, the court stated that if a

workman brought his lunch on the job and was poisoned by ptomaines therefrom, such an injury would not be held to arise out of the employment.

As opposed to these and similar opinions, we find many decisions to the effect that getting fresh air, smoking, resting, or eating food or ice cream, quenching thirst by water, beer or wine, taking a bath, use of telephone or toilet or other facilities, washing, pressing working clothes, and transportation to and from work are treated as arising out of the employment:

Horovitz, Workmen's Compensation, pages 114 to 117.

*DeStefano* v. *Alpha Lunch Co.*, 308 Mass. 38, 30 N. E. (2d) 827, where waitress, receiving meals as part of her pay, contracted trichinosis as a result of eating insufficiently cooked pork furnished by the employer, held to be a personal injury and accident arising out of the employment.

*Vilter Mfg. Co.* v. *Jahncke*, 192 Wis. 362, 212 N. W. 641, 57 A. L. R. 627, eating of ice cream by employee, at invitation of janitor of hospital where the employee was engaged in installing a refrigerator, and from which he contracted smallpox resulting in his death, held to grow out of his employment.

*Elliott* v. *Industrial Acc. Comm.*, 21 Cal. (2d) 281, 131 Pac. (2d) 521, 144 A. L. R. 358, where employee, for medicinal purposes, drank from bottle labeled wine, found in the employer's carpenter shop, which in fact contained a deadly poison resulting in his death, held to arise out of his employment.

In *Re Osterbrink*, 229 Mass. 407, 118 N. E. 657, it was held that a workman drinking muriatic acid through mistake for his own bottle of drinking water arose out of his employment.

*American Steel Foundries* v. *Czapala*, 112 Ind. App. 212, 44 N. E. (2d) 204: In this case the workman's eye was injured as a result of the explosion of a glass

bottle containing coffee which had been placed by him just inside the door of an annealing furnace, for the purpose of heating the coffee which he used with his lunch. It was held this was an injury arising out of his employment.

*Whiting-Mead Commercial Co.* v. *Industrial Acc. Comm.*, 178 Cal. 505, 173 Pac. 1105, 5 A. L. R. 1518, where employee was injured through lighting a cigarette during working hours, through ignition of bandage on his hand which was saturated with turpentine, held to arise out of the employment.

*Western Pipe & Steel Co.* v. *Industrial Acc. Comm.*, 49 Cal. App. (2d) 108, 121 Pac. (2d) 35, where employer's cafeteria was closed and the employee went out to secure his dinner, and in crossing the street after parking his car was struck by an automobile, resulting in his death, held to arise out of the employment.

*Ervin* v. *Industrial Comm.*, 364 Ill. 56, 4 N. E. (2d) 22, burns received by an employee from falling into a fire which he had built to warm himself as an incident to his employment, and which resulted in his death, was held to arise out of the employment.

*Cudahy Packing Co.* v. *Parramore*, 263 U. S. 418, 44 Sup. Ct. 153, 68 L. Ed. 366, 30 A. L. R. 532, where the deceased employee was killed in crossing a railroad track to his place of work, held to be an accident arising out of his employment.

In the present case if the lunch and Cola had been furnished by the employer to the employee Laws, and he had been injured as disclosed by the evidence, nearly all of the authorities would indicate that the accident was one which arose out of his employment. In principle it would seem that the same rule should be applied here. What difference does it make who furnished the lunch? It was necessary for the employee to eat. He was authorized to bring his lunch on the

premises and was required to care for it and consume it there. He was allowed an additional half hour to compensate for his lunch period. If the bottle had exploded when he was actually in the process of consuming his lunch, the claim could not well be made that the accident did not arise out of his employment because this was part of his job for which he was being paid. Does the fact that the bottle exploded when he was in the act of placing it on ice, to make it fit for consumption, alter the situation? We think not. Since the bringing and eating of his lunch on the premises during his hours of employment was one of the conditions of his employment, he most certainly had the right not only to care for it but also to properly prepare it for consumption.

It is our view that the accident to Laws arose out of the nature, conditions and obligations of his employment, within the meaning of the rule which has already been given. A machine must be given oil and cared for. If an employee is injured in handling the oil or tools required for the repair of any appliances in connection with his work, the accident is one that arises out of his employment. Likewise, employees working under the conditions as shown in this case of necessity must have sustenance. An accident arising from any preparation of their food, or in eating, is just as much an accident arising out of the employment as in the case of caring for a machine or any other appliance. Since Laws had to eat on the job, he was not merely pursuing his own business or pleasure, but was actually engaged in his employer's business. The necessities of his employer's business required him to be at the place of the accident at the time it occurred. It is no answer to this to say that the accident was of such a character as might have occurred at the employee's home or elsewhere, and that the employment in no way contributed to or caused the bottle to explode. To take such a position is to venture into

realms of possibility. Such a conclusion would be based upon speculation and uncertainty. The evidence is such as to justify the conclusion that Laws' injury was the result of a risk to which he was subjected in the course of his employment, and to which he would not have been subjected had he not been so employed. Under the facts the law sustains the commission's action.

The award is affirmed.

STANFORD, C. J., and LaPRADE, J., concur.