IN THE

# ARIZONA COURT OF APPEALS
## DIVISION ONE

---

MICHAEL TURNER, *Petitioner Employee*,

*v.*

THE INDUSTRIAL COMMISSION OF ARIZONA, *Respondent*,

ON TARGET STAFFING LLC, *Respondent Employer*,

WORK FIRST CASUALTY CO, *Respondent Carrier*.

No. 1 CA-IC 20-0025
FILED 7-15-2021

---

Special Action - Industrial Commission
ICA Claim No. 20182-890026
Carrier Claim No. 18836871-001

The Honorable Jeanne Steiner, Administrative Law Judge

**AFFIRMED**

---

COUNSEL

Jerome Gibson Stewart Stevenson Engle & Runbeck, P.C., Phoenix
By Joseph L. Coughlin
*Counsel for Petitioner Employee*

Industrial Commission of Arizona, Phoenix
By Gaetano J. Testini
*Counsel for Respondent*

Lundmark, Barberich, LaMont & Slavin, P.C., Phoenix
By R. Todd Lundmark
*Counsel for Respondent Employer and Respondent Carrier*

---

## OPINION

Judge Maria Elena Cruz delivered the opinion of the Court, in which Presiding Judge Jennifer M. Perkins and Judge Randall M. Howe joined.

---

**C R U Z**, Judge:

¶1        Michael Turner asks us to set aside an Industrial Commission of Arizona ("ICA") award finding his injury non-compensable. An administrative law judge ("ALJ") determined that Turner had not shown that his injury, which occurred while he was on break at work, was causally related to his employment. Because we agree that Turner's injury was caused by an accident that did not arise out of his employment, we affirm.

### FACTUAL AND PROCEDURAL HISTORY

¶2        We consider the evidence in a light most favorable to sustaining the award. *Lovitch v. Indus. Comm'n*, 202 Ariz. 102, 105, ¶ 16 (App. 2002). Turner worked in a call center that had a break room in which employees stored food, ate lunch, and lounged during work breaks. One night, as eighty-year-old Turner attempted to open a refrigerator in the break room, he fell to the floor, landing on his left side. He suffered a broken femur that required surgery and implantation of hardware. Turner filed a claim for workers' compensation, which was denied.

¶3        Turner challenged the denial, asserting that the refrigerator door was to blame for his fall. He testified the door was stuck, and when he pulled the door to open it, the refrigerator moved toward him, knocking him over. He also testified that employees and management knew the refrigerator door was hard to open. The ALJ heard testimony from other witnesses, however, who denied that the refrigerator had ever been hard to open or that any complaints had been made about it. Thus, the cause of Turner's fall became the central issue at the hearing.

¶4        The best evidence of why Turner fell was found on video. Two surveillance recordings showed the break room contained two full-size refrigerators placed side by side, a sink, coffee makers, a microwave,

2

and several small tables with chairs. Of note, one video taken before the accident showed Turner walking with a slight limp as he approached the refrigerator. Turner limped because of prior medical interventions to his left knee, which has been replaced several times since 2006. His left leg is slightly shorter than his right, causing a mildly altered gait. In the first video, Turner opened the refrigerator door without difficulty.

¶5        The second video, taken later, captured the moment Turner fell. It showed Turner about to open the door of the refrigerator, his right foot forward as he reached for the handle with his right hand. Turner then started to pivot his body toward the refrigerator, swinging around to make room for the door to open. As Turner began his pivot, his left foot crossed behind his right foot, where it caught on his right heel, causing him to lose his balance. At first, Turner tried to break his fall by maintaining his grip on the door handle. He was unable to do so, and almost immediately let go of the handle, falling to the floor. Before he let go, the force of his weight pulling on the door caused the refrigerator to slide toward him; it pivoted on its back left corner and ended up several feet out of place.

¶6        The ALJ reviewed both videos and heard testimony from Turner and other lay witnesses noted above. In addition, two doctors testified that Turner's injury was caused by his fall and that he had been at risk for such a fall due to his age, altered gait, and medical history related to his left knee. The ALJ rejected Turner's version of how he fell, finding that the evidence did not establish that "the fridge door [was] stuck when [Turner] pulled on it to open it or that the fridge was on wheels, moved forward, and knocked him to the floor." She concluded that Turner had failed to show "his risk of falling was in any way peculiar to or increased by his employment." After an administrative review in which the ALJ affirmed her decision, Turner sought review by this court.

## DISCUSSION

¶7        We will affirm an ICA award if it is reasonably supported by the evidence. *Lovitch*, 202 Ariz. at 105, ¶ 16. We defer to the ALJ's resolution of conflicting evidence and affirm the ALJ's findings if they are supported by any reasonable theory of the evidence. *Perry v. Indus. Comm'n*, 112 Ariz. 397, 398-99 (1975).

¶8        To prevail on his claim, Turner needed to show that he suffered an injury "by [1] accident [2] arising out of and [3] in the course of his employment." Ariz. Rev. Stat. ("A.R.S.") § 23-1021; *Ibarra v. Indus. Comm'n*, 245 Ariz. 171, 174, ¶ 14 (App. 2018). There is no question that

Turner's fall was an accident. Furthermore, the parties agree that, under the "personal comfort" doctrine, Turner was acting in the course of his employment when he approached the refrigerator in the break room. *See Sacks v. Indus. Comm'n*, 13 Ariz. App. 83, 84 (1970) ("employees who engage in reasonable acts which minister to their personal comforts remain within the course and scope of employment"). Thus, the issue is whether the injury arose out of Turner's employment. To prove that his injury arose out of his employment, Turner must show a causal connection between the employment and the injury. *See id.*

¶9            We defer to the ALJ's factual findings, and the facts in the record do not show a causal connection between Turner's injury and his employment. Turner fell not because the refrigerator door was stuck or because of any other abnormality with the refrigerator. Instead, Turner accidentally tripped himself as he reached to open the refrigerator door. The refrigerator shifted in place not because of the force required to open its door, but because after Turner lost his balance, he held on to the door in a vain effort to avoid falling. Simply put, Turner fell because of his weakened left knee and altered gait, conditions that had nothing to do with his employment. The ALJ could not find any defect in the refrigerator, break room, or any other aspects of the workplace that caused the injury, and neither can we. To borrow language from *Sacks*, our workers' compensation system addresses "risks of the employment or inherent in the nature of the [e]mployment, and not . . . risks inherent in the physical condition of the employee." *Id.* As in *Sacks*, Turner's risk of falling on his left hip while trying to open the break room refrigerator was not "a risk in any way peculiar to or increased by [Turner]'s employment." *See id.*; *see also* 1 Arthur Larson et al. *Larson's Workers' Compensation Law* § 9.01(4)(b) (2020) (in an idiopathic fall case, "it is reasonable to require a showing of at least some substantial employment contribution to the harm").

¶10            Turner's reliance on *Goodyear Aircraft Corp. v. Indus. Comm'n*, 62 Ariz. 398 (1945) is misplaced. In that case, a soda bottle exploded at the worksite, injuring a security guard as he was putting it into a cooler to drink during his lunch break. *Id.* at 400-01. Our supreme court held that the injury was compensable because, as a security guard, the worker was required to eat lunch on the premises. *Id.* at 415. Forty-five years later, the court conceded that the *Goodyear* decision had confused the "in the course of" component of the compensability formula with the "arising out of" component:

> [T]hese two tests have been confused. For example, in
> *Goodyear,* we said the injury "arose out of" claimant's

employment because "his employer's business required him to be at the place of the accident at the time it occurred." This analysis focused on the time and place of the accident which is part of the "in the course of" employment analysis [not the "arising out of" analysis].

*Circle K Store No. 1131 v. Indus. Comm'n*, 165 Ariz. 91, 94 (1990) (internal citation omitted). In *Goodyear*, a defect in the bottle was the cause of the explosion. 62 Ariz. at 401. The defect was a condition outside of the control of either the worker or the employer. In those types of cases, the responsibility to compensate for injury is usually placed on the employer rather than on the worker. *See* 1 *Larson's Workers' Compensation Law* § 9.03(3) (discussing the *Goodyear* decision). Thus, *Goodyear* does not support an argument that an injury arises out of the employment solely because a worker is injured while on break.

¶11 Instead, we find the facts in *Sacks* remarkably similar to those here. There, a worker with "a pre-existing low back instability" suffered an injury as she was arising from a toilet at her workplace. 13 Ariz. App. at 83-84. We noted that the mere fact that the accident occurred at work (i.e., that the accident occurred "within the course and scope of employment") was not enough to establish compensability. *Id.* at 84. Instead, we held a claimant also must show that the injury arose out of the employment, meaning proof of "a causal connection between the employment and the injury." *Id.* The claimant in *Sacks* could not make that showing because the accident was not caused by the surroundings or conditions of the workplace, but instead was caused by "a degenerative condition which might have been brought to the acute stage by any one of a number of everyday motions, at home or at work." *Id.*

¶12 Larson's treatise favorably discusses the *Sacks* decision:

The injury [to Sacks] was held to have occurred in the course of [Sack]'s employment, pursuant to the personal comfort doctrine, but the court denied compensation on grounds that the injury did not arise out of the employment. Note that the employment component was weak on both the "course" and "arising" side. As to "course," [Sacks] was engaged in a personal comfort activity; as to "arising," the real cause of injury was progressive deterioration of a personal weakness, with no real exertion or mishap related to the employment. [Sacks] was sufficiently within the course of employment so

that, [if there were] some significant element of employment causal connection, an award could stand.

3 *Larson's Workers' Compensation Law* § 29.01. We find the same analysis applicable in this case. Therefore, the ALJ correctly concluded that Turner failed to show that his injury was caused by or arose out of his employment and correctly denied his application for compensation.

## CONCLUSION

¶13        For the foregoing reasons, we affirm.



AMY M. WOOD • Clerk of the Court
FILED:   AA