IN THE

# ARIZONA COURT OF APPEALS

### DIVISION ONE

KENYATTA GOINS, *Petitioner,*

*v.*

THE INDUSTRIAL COMMISSION OF ARIZONA, *Respondent,*

GKI 2 LLC, *Respondent Employer,*

EMPLOYERS ASSURANCE CO., *Respondent Carrier.*

No. 1 CA-IC 24-0021

FILED 01-21-2026

Special Action - Industrial Commission
ICA Claim No. 20232080015
Carrier Claim No. 20230154
The Honorable Amy L. Foster, Administrative Law Judge

**AFFIRMED**

COUNSEL

Broening Oberg Woods & Wilson P.C., Phoenix
By Kelley M. Jancaitis
*Co-Counsel for Petitioner*

Snow, Carpio & Weekley, PLC, Phoenix
By Brian A. Weekley
*Co-Counsel for Petitioner*

Industrial Commission of Arizona, Phoenix
By Afshan Peimani
*Counsel for Respondent*

Ruegsegger Simons & Stern, LLC, Denver, Colorado
By Taylor C. Leonard
*Counsel for Respondent Employer and Carrier*

---

## OPINION

Presiding Judge Michael J. Brown delivered the opinion of the Court, in which Judge D. Steven Williams and Judge Daniel J. Kiley joined.

---

**B R O W N**, Judge:

¶1        Kenyatta Goins was injured at his workplace when a handgun he was carrying accidentally discharged.  His subsequent claim for workers' compensation benefits was denied.  The primary issue before us is whether his injury arose out of his employment.  Because Goins has not met his burden of showing his injury was caused by a risk of employment or incidental to his work duties, we affirm the denial of benefits.

## BACKGROUND

¶2        Goins worked as an estimator for GKI 2 LLC ("GKI"), owner of an auto body repair shop known as Chaney's Collision Center ("Chaney's").  Located in an industrial area of Glendale, Chaney's consists of a building and an open surface area where damaged cars are parked until repaired.  Goins' job duties included assessing damages to vehicles caused by accidents or collisions.

¶3        About six weeks after Goins began working at Chaney's, he was working on an estimate to repair a pickup truck and decided to move it so he could have more space to take photos.  As Goins stepped up into the driver's side of the cab, his semi-automatic pistol discharged, shooting him in the leg.  A police officer who was dispatched to the scene determined Goins had accidentally discharged the gun, "due to [Goins] not having a holster for his firearm."

¶4        Goins filed a workers' injury report with the Industrial Commission of Arizona ("ICA"), but GKI and its carrier, Employers Assurance Co. (collectively, "GKI"), denied the claim.  Goins challenged the denial, and an administrative law judge ("ALJ") held a hearing to determine whether the injury was compensable.

¶5        Goins testified that even though the gun's safety lever was in the "safe" position, the gun fired as he lifted his right leg to get into the truck.  He said he was carrying the gun in his waistband with a "tactical belt that kind of held [the gun] in position."  Goins acknowledged he chose to carry the gun while working but that neither GKI nor his work duties required it.  He explained he had carried a concealed firearm this way for years, both at and outside of work for personal safety.

¶6        Goins also testified that his manager and other co-workers knew he was carrying a firearm every day at work.  According to Goins, GKI did not "expressly prohibit[]" employees from carrying firearms during employment, and there was no policy in the company's employee handbook addressing the issue.  Yet, he conceded that security duties were not part of his employment and he had never used the gun for a work-related purpose.  Instead, Goins carried the gun while working because he considered the "neighborhood" to be dangerous given the "homeless, vagrants, [and] high crime statistics," adding that "[n]umerous dead bodies have been found around the area."

¶7        Goins' manager testified that he too routinely carried a gun but would leave it in his vehicle while he was working.  He corroborated much of Goins' testimony, including that Goins had no security duties.  The manager knew Goins carried a gun while working but warned him "not to carry it on the premises," especially without "having it on a holster."  The manager acknowledged Goins had not been expressly prohibited from carrying a gun at work, and the safety lever was engaged when he took possession of Goins' gun after the injury.

¶8        Unlike what Goins claimed, the manager believed Chaney's to be a safe place to work.  Responding to why he leaves his gun in his vehicle while working, the manager explained he did not feel threatened, nothing bad had happened at Chaney's, and he had never witnessed crime on the property or in the area.

¶9        After considering the evidence and resolving conflicting facts, the ALJ determined that Goins failed to establish by a preponderance of the evidence that he sustained a compensable injury.  Addressing Goins' position that he carried a gun because he believed the workplace location was unsafe, the ALJ explained that "there must be a causal relationship between the employment and the injury."  The ALJ found in part that Goins owned the gun for two years before he started working for GKI and even if the workplace is in a high-crime area, he "chose to carry a gun on his person at all times, regardless of whether he was at work."  The ALJ therefore

denied the claim, concluding that the risk of injury was "wholly personal" to Goins and the risk was not increased by his employment.

¶10 The ALJ affirmed the award on review and Goins filed this statutory special action challenging the award. We have jurisdiction under A.R.S. §§ 12-120.21(A)(2), 23-951(A), and Arizona Rules of Procedure for Special Actions 10(c).

## DISCUSSION

¶11 Goins challenges the denial of his claim, asserting the ALJ erred by concluding there was "an insufficient causal relationship between the employment and the injury." When reviewing a workers' compensation award, we defer to the ALJ's factual findings but review questions of law de novo. *W. Millwork v. Indus. Comm'n*, 256 Ariz. 177, 180, ¶ 13 (App. 2023). We consider the evidence in the light most favorable to upholding the ALJ's award and will affirm if reasonable evidence supports it. *Turner v. Indus. Comm'n*, 251 Ariz. 483, 484, ¶¶ 2, 7 (App. 2021).

¶12 An injured worker has the burden of establishing the statutory elements of a compensable workers' compensation claim. *See Montgomery v. Indus. Comm'n*, 173 Ariz. 106, 108 (App. 1992). Thus, Goins had to show he suffered an injury for an accident arising out of and in the course of his employment. *See* A.R.S. § 23-1021; *Ibarra v. Indus. Comm'n*, 245 Ariz. 171, 174, ¶ 14 (App. 2018). We consider these two elements as part of a single test "known as the 'quantum theory' of work connection." *W. Millwork*, 256 Ariz. at 183, ¶ 25. Each case must be decided on its own facts and within the framework of the two elements while considering the totality of the circumstances. *Royall v. Indus. Comm'n*, 106 Ariz. 346, 349 (1970); *Finnegan v. Indus. Comm'n*, 157 Ariz. 108, 110 (1988). An injured employee must prove all material elements of a claim by a preponderance of the evidence, including "the necessary connection to a work-related injury." *See T.W.M. Custom Framing v. Indus. Comm'n*, 198 Ariz. 41, 45–46, ¶ 12 (App. 2000).

### A. In the Course of Employment

¶13 The "course of employment" element refers to the time, place, and circumstances surrounding the injury. *Nowlin v. Indus. Comm'n*, 167 Ariz. 291, 293 (App. 1990). "The type of activity which most clearly satisfies the '[in the] course' test is the active performance by the employee of the specific duties which he was engaged to perform." *Royall*, 106 Ariz. at 350. Contrary to GKI's assertion, the record shows that Goins was acting in the course of employment when the injury occurred. His injury occurred at a

time when Goins was employed and expected to work, and it took place at Chaney's, where a GKI estimator like Goins would reasonably be found during working hours. Goins was also performing an estimate, one of his employment duties, when the accident occurred. Thus, the injury occurred in the course of his employment.

## B. Arising Out of Employment

¶14 The "arising out of" element concerns the origin, or causal connection, between the injury and the employment. *See Royall*, 106 Ariz. at 349. "To arise out of employment, an injury must result from some risk of the employment or be incidental to the discharge of the duties thereof." *W. Millwork*, 256 Ariz. at 183, ¶ 29. Generally, addressing whether an injury arose from a risk of employment requires analysis of both the origin and the nature of the risk involved. *Id.* Whether a particular risk arises out of employment requires assessing several possible origins, or categories, which include: (1) "risks distinctly associated with the employment"; (2) "risks personal to the claimant"; and (3) "mixed risks," consisting of a combination of personal and work risks. *See Nowlin*, 167 Ariz. at 293.

¶15 Goins argues the origin of his injury was a "mixed risk," which arises when "a personal cause and an employment cause combine to produce the harm." *Samaritan Health Servs. v. Indus. Comm'n*, 170 Ariz. 287, 290 (App. 1991). According to Goins, the origin of the risk of his injury was mixed because he climbed into the truck to reposition it (a work-related activity) while carrying a firearm for personal protection (an existing condition). But he cites no authority suggesting that an injury arising from an accidental discharge of a gun claimed to be for personal protection while working should be analyzed under the mixed risk category. *Cf.* 1 Larson's Workers' Compensation Law § 4.04 (2025) ("The most common example [of mixed risk] is that of a person with a weak heart who dies because of strain occasioned by the employment.").

¶16 Nor does Goins explain how the handful of Arizona cases analyzing worker injuries under a mixed risk analysis support his position. None of those cases are remotely similar to the circumstances presented here. *See Martinez v. Indus. Comm'n of Arizona*, 192 Ariz. 176, 180, ¶ 20 (1998) (applying a mixed risk analysis where a worker's "bending activity . . . on a pre-existing knee condition [caused] a second injury"); *W. Millwork*, 256 Ariz. at 184, ¶ 33 (analyzing a claim as mixed risk where decedent's "risk of work-related exposure from interacting with potentially infected co-workers in person combined with his underlying medical condition . . . resulted—legally and medically—in his death from COVID-19");

*Samaritan Health Servs.*, 170 Ariz. at 287 (applying a mixed risk analysis where a worker sustained a knee injury while performing a filing task and the worker acknowledged having several prior knee injuries).

¶17        Unlike those cases, Goins has not demonstrated he had a personal condition or personal cause indicating the mixed risk analysis should apply here. Instead, as the ALJ concluded, the risk of injury was personal to Goins. And because Goins was responsible for bringing the gun to the workplace without an employment-related reason for doing so, his case is more appropriately analyzed as an imported danger. *See Space Steel Corp. v. Jones' Dependents*, 248 So. 2d 807, 809 (Miss. 1971) ("The doctrine of 'imported danger' refers to that class of cases in which the source of the injury was a hazard brought onto the employment premises by the claimant himself. The heart of the issue is whether the pistol had any relation to the employment. The evidence reflects that it had none."); 1 Larson's Workers' Compensation Law § 9.03 (recognizing situations where "the imported-danger idea has been invoked: explosives, automobiles, food and drink, matches, and unsuitable clothing brought by the employee," and that such cases, "on the whole, confirm the basic rule that there must be some employment contribution to the risk when the initial source of harm is a distinctly personal danger"). Goins has not established that GKI contributed to the risks of his possession of the gun at work.

¶18        Goins asserts that an employment cause can be a contributing factor when the activity resulting in the injury is "authorized, necessary, or a condition of the work." *Goodyear Aircraft Corp. v. Indus. Comm'n*, 62 Ariz. 398 (1945). In *Goodyear*, a warehouse employee was instructed to bring food and drink to work because he was given only a half-hour lunch break. 62 Ariz. at 400. He routinely placed his bottled soda in a cooler filled with ice and water to keep it cool, as other workers also did. *Id.* at 400–401. While doing so, the bottle exploded and a piece of glass struck his eye, causing permanent loss of sight in that eye. *Id.* at 401. The ICA awarded benefits. *Id.* Our supreme court affirmed, reasoning in part "that employees working under the conditions as shown in this case of necessity must have sustenance," and an accident resulting from preparing or eating food "is just as much an accident arising out of the employment as in the case of caring for a machine or any other appliance." *Id.* at 415.

¶19        Goins argues the risks associated with carrying the gun became partly employment related, like in *Goodyear*, because GKI "acquiesced" to him carrying the gun while at work. But no aspect of Goins' job duties required him to carry a gun. That GKI did not directly prohibit him from carrying a gun did not make it necessary for his

employment, and there is no evidence GKI authorized or allowed Goins to perform security duties as part of his job. Moreover, Goins' subjective opinion that Chaney's is in a dangerous area, uncorroborated by other evidence and contradicted by his supervisor, did not require the ALJ to find a need to carry a gun. Indeed, the ALJ discounted Goins' subjective concerns because he always carried the gun regardless of his location. Thus, contrary to Goins' argument, by failing to directly prohibit him, or any of its employees, from carrying guns at the worksite, GKI did not "accept[] the risk of accidental discharge during work hours," especially when no evidence was presented tying such guns to any work-related purpose. *Cf. Southland Corp. v. Hester*, 490 S.W.2d 132, 134 (Ark. 1973) (denying compensation because "the presence of the firearm had no connection with the employer's business or the employee's duties."); *Ward v. Halliburton Co.*, 415 P.2d 847, 848 (N.M. 1966) (finding claimant's accidental shooting did not arise out of employment, and noting he cited no case allowing "recovery where the employment does not justify the presence of a gun on the premises or where the bullet did not originate from a source other than the claimant's personal weapon").

¶20 Relying on *Bennett v. Indus. Comm'n*, 163 Ariz. 534 (App. 1990), Goins contends an employer's "acquiescent weapons policy renders an accidental gunshot wound a risk related to the employment." There, the employee was found dead at his workplace from an apparently accidental gunshot. *Id.* at 535–36. His worker's compensation claim was denied. *Id.* at 536. Because the surrounding circumstances were unclear, this court applied the "unexplained death presumption," which relaxes the burden of showing that an employee's death arose out of employment. *Id.* at 536–37. The case here does not involve a death, and the record confirms how Goins was shot.

¶21 Goins also points to the findings noted in *Chambers v. Union Oil Co.*, 153 S.E. 594 (N.C. 1930), to support his acquiescence argument. But the employee driver in that case, whose gun accidentally discharged when he was showing it to a fellow worker, carried the gun "to protect his employer's property from robbery," and the employer testified "one of my drivers had been held up. He reported it to me." *Id.* at 596. Nothing in the record shows Goins had work-related protection duties. For the same reasons, Goins' reliance on *Martinez v. Soundtown*, 563 N.Y.S.2d 221, 222 (N.Y. App. Div. 1990), where one of the duties of the salesclerk who brought a gun to work "was to stand outside at closing while the manager locked the gate and safely exited in his car," is misplaced.

7

¶22 Although decided more than a century ago, *Ward v. Indus. Accident Comm'n of State of Cal.*, 164 P. 1123 (Cal. 1917) supports our analysis. In that case, two brothers were hired to dig post holes. *Id.* They anticipated that the work, in addition to traveling to the site, would take several days. *Id.* The brothers hired their nephew to help them and loaded a wagon for the trip. *Id.* The nephew brought a shotgun with him because he was hoping to hunt after work. *Id.* The nephew propped the shotgun against the seat between himself and one of his uncles. *Id.* Neither brother objected to the gun or its placement. *Id.* During the trip, the gun fell over and discharged, shooting one of the brothers. *Id.* at 1124.

¶23 Although the accident occurred in the course of employment, the court denied compensation because "[t]he shotgun had no connection with nor bearing upon any part of the work which the men were employed to do." *Id.* at 1123. The court concluded:

> Th[is] case is clearly one where an employ[ee] in the performance of his duty meets with an accident bearing no relation whatsoever to the nature of the employment. . . . 'The accidents arising out of the employment of the person injured are those in which it is possible to trace the injury to the nature of the employ[ee]'s work or to the risks to which the employer's business exposes the employ[ee]. The accident must be one resulting from a risk reasonably incident to the employment.'

*Id.* at 1124 (citation omitted*); cf. Nurmi v. Indus. Accident Comm'n of Cal.*, 30 P.2d 529, 530 (Cal. Ct. App. 1934) (noting accidental discharge of personal shotgun arose out of employment because, unlike *Ward*, delivery claimant had reason to protect himself during deliveries where prior thefts had been proven).

¶24 The risk here was that Goins' gun, which he carried for personal protection, might accidentally discharge and cause an injury. But he has not shown how that risk was inherent to his employment or incidental to the discharge of his duties. *See W. Millwork*, 256 Ariz. at 183, ¶ 29. Nor has he demonstrated that GKI contributed to the risk of being injured. *See* 1 Larson's Workers' Compensation Law Chapter 9 (2025) ("Injuries arising out of risks or conditions to the claimant do not arise out of the employment unless the employment contributes to the risk or aggravates the injury."). Because the origin of the risk is wholly personal, we need not consider the nature of the risk. The ALJ did not err in declining to award workers' compensation benefits.

## CONCLUSION

¶25        Because Goins has not established that his injury arose out of his employment with GKI, we affirm.

